**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE OF THE $29,615,000 PHILADELPHIA AUTHORITY FOR INDUSTRIAL DEVELOPMENT SENIOR HOUSING REVENUE BONDS (THE PAVILION),** | : : : : : : | **CIVIL ACTION** |
| **Plaintiff,** | : : | **NO.** |
| **v.** | : : : | |
| **PAVILION APARTMENTS PENN LLC,** | : : : | |
| **Defendant.** | : : : : | |

<u>**COMPLAINT**</u>

Plaintiff, Wilmington Trust, National Association, as Trustee of the $29,615,000 Philadelphia Authority for Industrial Development Senior Housing Revenue Bonds ("<u>Trustee</u>"), for its complaint against defendant Pavilion Apartments Penn LLC ("<u>Pavilion</u>" or "<u>Borrower</u>"), avers as follows:

**<u>PARTIES, JURISDICTION AND VENUE</u>**

1.      The Trustee is a national banking association with its main office, as designated in its Articles of Association, located in Wilmington, Delaware. The Trustee brings this action not in its individual capacity, but solely as Trustee for the benefit of the holders of the Bonds, as defined below.

2.      Pavilion is a Pennsylvania limited liability company.  Upon information and belief, Pavilion's sole member is an Ohio nonprofit corporation.

3.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the matter is controversy exceeds $75,000 and the action is between citizens of different states.

4.      Venue exists in this judicial district pursuant to 28 U.S.C. § 1391(a)(2) because the real property that is the subject of this action is situated in this district.

## FACTS

**A.      The Loan Transaction**

5.      The Trustee is the trustee under a Trust Indenture dated as of July 1, 2016 between the Philadelphia Authority for Industrial Development ("PAID") and the Trustee (the "Indenture"). A true and correct copy of the Indenture is attached hereto as **Exhibit A**.[1]

6.      Under the Economic Development Financing Law, as amended, PAID is authorized to issue revenue bonds and to use the proceeds from the sale thereof to make loans to finance the acquisition, rehabilitation, and equipping of housing facilities which are intended to promote the creation or retention of employment, the stimulation of economic activity, and the promotion of improvements in the health, safety and welfare of persons in the Project Jurisdiction.

7.      As authorized by the Act, under the Indenture, PAID issued certain Senior Housing Revenue Bonds (The Pavilion), Series 2016A, in the aggregate principal amount of $27,410,000, and certain Senior Housing Revenue Bonds (The Pavilion), Subordinate Series 2016B, in the aggregate principal amount of $2,205,000 (collectively,  the "Bonds") in order to obtain funds to loan to Pavilion to acquire a long-term leasehold interest in, renovate, and equip a 295-unit multifamily residential rental housing facility located in the City of Philadelphia known as The Pavilion (the "Project").

---

[1]      All capitalized terms and words not otherwise defined herein shall have the meaning given to them in the Indenture.

8.      On or about July 1, 2016, PAID issued to Pavilion a loan in the principal amount of $29,615,000 (the "Loan").

9.      The Loan is evidenced by a Loan Agreement between PAID and Pavilion dated as of July 1, 2016 (the "Loan Agreement").   A true and correct copy of the Loan Agreement is attached hereto as **Exhibit B**.

10.     Pavilion also executed a Multifamily Promissory Note (the "Note") dated as of July 5, 2016.  A true and correct copy of the Multifamily Promissory Note is attached hereto as **Exhibit C**.

11.     To secure repayment on the Note, Pavilion executed in favor of the Trustee, *inter alia*, an Open End Leasehold Mortgage and Assignment of Leases and Rents and Security Agreement dated as of July 5, 2016 (the "Leasehold Mortgage"), with respect to real and other property bearing the legal description set forth in Exhibit A to the Leasehold Mortgage and located at 3901 Conshohocken Avenue, Philadelphia, PA 19131.  A true and correct copy of the Leasehold Mortgage is attached hereto as **Exhibit D**.   The Leasehold Mortgage was recorded with the Philadelphia County Recorder of Deeds (the "Recorder") on July 25, 2016, as Document No. 53089394.

12.     In addition, Pavilion, the Trustee, Kiryat Greenriar, L.P. ("Greenbriar"), and Fannie Mae are all parties to a Subordination, Attornment and Nondisturbance Agreement ("SNDA") related to the Project. The SNDA was recorded with the Recorder on July 25, 2016, as Document No. 53089393.

13.     The Indenture, the Loan Agreement, the Leasehold Mortgage, and various other documents executed by Pavilion in favor of PAID and the Trustee with respect to the Loan are collectively referred to herein as the "Bond Documents."

3

14.     All capitalized terms not otherwise defined in this Complaint are used as defined in the Indenture and Loan Agreement.

**B.     The Ground Lease**

15.     Pavilion's long-term leasehold interest in the land on which the Project is constructed stems from a series of agreements and instruments comprising the "Ground Lease," as described more fully below.

16.     As of July 5, 2016, Greenbriar, as Landlord, and Pavilion, as Tenant, executed a Third Amendment of Lease (the "Third Amended Lease") for the land on which the Project is located. A true and correct copy of the Third Amended Lease is attached hereto as **Exhibit E**. The Third Amended Lease was recorded with the Recorder on July 25, 2016, as Document No. 53089388.

17.     The Third Amended Lease incorporates and modifies prior agreements and instruments comprising the Ground Lease, including but not limited to the Second Amendment of Lease (the "Second Amended Lease") dated as of December 10, 2002 between Greenbriar, as Landlord, and a previous tenant, Pavilion Associates, L.P. ("Pavilion Associates"). A true and correct copy of the Second Amended Lease is attached hereto as **Exhibit F**.

18.     Pavilion Associates assigned its interest in the Ground Lease to Pavilion Preservation, L.P. ("Pavilion Preservation") by way of an Assignment and Assumption Agreement dated December 10, 2002.

19.     In addition to the interest Pavilion acquired under the Third Amended Lease, Pavilion Preservation assigned its interest in the Ground Lease to Pavilion by way of an Assignment and Assumption of Ground Lease (the "Assignment"), dated as of July 5, 2016. A true and correct copy of the Assignment is attached hereto as **Exhibit G**. The Assignment was recorded with the Recorder on July 25, 2016, as Document No. 53089387.

4

20.     The original iteration of the Ground Lease between the predecessors in interest to Pavilion and Greenbriar was dated as of November 28, 1973.

21.     Accordingly, in its various forms and through its various amendments, the Ground Lease has been in continuous existence for nearly 49 years.

22.     Pursuant to the Third Amended Lease, the term of the Ground Lease is 35 years from the date of the Third Amended Lease, or until July 5, 2051.

23.     Pursuant to the SNDA, the rights and obligations of the "Leasehold Mortgagee" under § 3 of the Second Amended Lease apply to the Trustee as the "Tenant Lender."

**C.     Pavilion defaults under the Bond Documents.**

24.     Pavilion is in default under the Loan Agreement due to its failure to comply with numerous provisions of the Loan Agreement, as set forth further below.

25.     Under § 8.01(d) of the Indenture, the occurrence of a "Default" under the Loan Agreement constitutes an "Event of Default" under the Indenture. An Event of Default under the Indenture likewise constitutes an Event of Default under the Leasehold Mortgage.

26.     The Loan Agreement requires Pavilion to remit all Project Revenues (as defined in the Loan Agreement) to the Trustee in amounts sufficient to pay Basic Loan Payments and Additional Loan Payments. (Loan Agreement § 3.2.)

27.     Since at least October 2019, Pavilion has failed to remit Project Revenues in amounts sufficient to make Additional Loan Payments, in violation of § 3.2 of the Loan Agreement.

28.     The Trustee provided notice on or about February 4, 2021 that Pavilion is in default based on its noncompliance with § 3.2 of the Loan Agreement. A true and correct copy of the February 4, 2021 notice is attached hereto as **Exhibit H**.

5

29.     The Loan Agreement requires Pavilion to certify its Debt Service Coverage Ratio within 180 days after the end of each Fiscal Year, as part of its annual Audited Financial Statements. (Loan Agreement §§ 4.4, 6.7(a).)

30.     Pavilion has failed to certify its Debt Service Coverage Ratio, in violation of §§ 4.4 and 6.7(a) of the Loan Agreement.

31.     The Trustee provided notice on or about February 4, 2021 that Pavilion is in default based on its noncompliance with §§ 4.4 and 6.7(a) of the Loan Agreement.

32.     The Loan Agreement requires that Pavilion satisfy a Coverage Test, meaning that its Debt Service Coverage Ratio for each period must be equal to or greater than 1.20 to 1 on all Outstanding Senior Bonds and all Senior Parity Indebtedness and 1.10 to 1 on all Outstanding Senior Bonds and Subordinate Bonds and all Senior Parity Indebtedness and Subordinate Parity Indebtedness. (Loan Agreement § 4.4.)

33.     In the event that the Coverage Test is not met, the Loan Agreement requires Pavilion to retain a Management Consultant to prepare recommendations with respect to the operations of the Project and the sufficiency of the rates, fees, and charges imposed by Pavilion. (Loan Agreement § 4.5.)

34.     Pavilion has failed to satisfy the Coverage Test and retain a Management Consultant, in violation of § 4.5 of the Loan Agreement.

35.     The Trustee provided notice on or about February 4, 2021 that Pavilion is in default based on its noncompliance with § 4.5 of the Loan Agreement.

36.     The Loan Agreement requires Pavilion to deliver to the Trustee annually a report from an Insurance Consultant setting forth a description of the insurance maintained by Pavilion and then in effect, and stating whether, in the opinion of the Insurance Consultant, such insurance

DMFIRM #404976376 v1

complies with the requirements of Article V of the Loan Agreement and adequately projects the Project and Pavilion's operations. (Loan Agreement § 5.5(a).)

37.     Pavilion has failed to deliver the required annual reports from an Insurance Consultant since at least 2020, in violation of § 5.5 of the Loan Agreement.

38.     The Trustee provided notice on or about February 4, 2021 that Pavilion is in default based on its noncompliance with § 5.5 of the Loan Agreement.

39.     The Loan Agreement requires Pavilion to instruct the HAP Administrator or other to deposit the revenues generated pursuant to the HAP Contract to be wired directly from the HAP Administrator to the Trustee for deposit into the Revenue Fund. (Loan Agreement § 3.2(b).)

40.     Pavilion has failed to instruct the HAP Administrator to deposit revenues generated pursuant to the HAP Contract into the Revenue Fund, in violation of § 3.2(b) of the Loan Agreement.

41.     The Trustee provided notice on or about August 16, 2022 that Pavilion is in default based on its noncompliance with § 3.2(b) of the Loan Agreement. A true and correct copy of the August 16, 2022 notice is attached hereto as **Exhibit I**.

42.     The Loan Agreement requires Pavilion to provide a written copy of the monthly HAP Payment request form to the Trustee. (Loan Agreement § 4.13(b).)

43.     Pavilion has failed to provide a written copy of the monthly HAP Payment request form to the Trustee, in violation of § 4.13(b) of the Loan Agreement.

44.     The Trustee provided notice on or about August 16, 2022 that Pavilion is in default based on its noncompliance with § 4.13(b) of the Loan Agreement.

45.     The Loan Agreement requires Pavilion to submit to the Trustee a Needs Assessment Analysis, which includes recommendations for (a) the monthly amount to be deposited

to the Repair and Replacement Fund and (b) the Replacement Reserve Requirement. (Loan Agreement § 4.12.)

46.     Pavilion has failed to provide the Trustee a Needs Assessment Analysis, in violation of § 4.12 of the Loan Agreement.

47.     The Trustee provided notice on or about August 16, 2022 that Pavilion is in default based on its noncompliance with § 4.12 of the Loan Agreement.

48.     The Loan Agreement requires Pavilion to deliver to the Trustee Audited Financial Statements. (Loan Agreement § 6.7(a).)

49.     Pavilion has failed to deliver to the Trustee Audited Financial Statements for the Fiscal Years of 2020 and 2021, in violation of § 6.7(a) of the Loan Agreement.

50.     The Trustee provided notice on or about August 16, 2022 that Pavilion is in default based on its noncompliance with § 6.7(a) of the Loan Agreement.

51.     The Loan Agreement requires Pavilion to deliver a statement to the Trustee certifying a review of Pavilion's activities for each Fiscal Year and listing each known default, as applicable. (Loan Agreement § 6.7(c).)

52.     Pavilion has failed to deliver to the Trustee a statement certifying a review of Pavilion's activities, in violation of § 6.7(c) of the Loan Agreement.

53.     The Trustee provided notice on or about August 16, 2022 that Pavilion is in default based on its noncompliance with § 6.7(c) of the Loan Agreement.

54.     The Loan Agreement requires Pavilion to prepare and deliver to the Trustee an annual Budget of anticipated Project Revenues and Operating Expenses. (Loan Agreement § 6.8.)

55.     Pavilion has failed to deliver to the Trustee an annual Budget for the Fiscal Years 2021 and 2022, in violation of § 6.8 of the Loan Agreement.

DMFIRM #404976376 v1

56.     The Trustee provided notice on or about August 16, 2022 that Pavilion is in default based on its noncompliance with § 6.8 of the Loan Agreement.

57.     As of the date of this Complaint, Pavilion has failed to cure any of the defaults set forth above.

**D.     Pavilion allegedly defaults under the Ground Lease.**

58.     On August 16, 2022, Greenbriar, through counsel, sent a letter to counsel for Pavilion, stating that Pavilion has defaulted in its obligations under the Ground Lease based on an alleged failure to pay rent beginning in February 2022 and failure to pay utilities beginning in January 2022. The letter states that Greenbriar has elected to accelerate Pavilion's obligations under the Ground Lease, including the payment of all rent and other amounts currently due or to become due in the future, and to terminate the Ground Lease effective October 16, 2022. A true and correct copy of the August 16, 2022 letter is attached hereto as **Exhibit J**.

59.     The August 16, 2022 letter was additionally sent to the Trustee.

60.     Greenbriar subsequently prepared a summary of Pavilion's alleged arrearages under the Ground Lease on September 7, 2022. The summary reflects purported arrearages of $375,698.37. A true and correct copy of the arrearages summary is attached hereto as **Exhibit K**.

61.     Pavilion's alleged defaults under the Ground Lease constitute further defaults under § 4.3 of the Loan Agreement, which requires Pavilion to pay all Operating Expenses when due. As provided in the Indenture, Operating Expenses include Lease Payments.

62.     The Trustee provided notice on or about September 8, 2022 that Pavilion is in default under the Loan Agreement based on its alleged defaults under the Ground Lease. A true and correct copy of the September 8, 2022 notice is attached hereto as **Exhibit L**.

DMFIRM #404976376 v1

E.      **The Trustee's Damages and Remedies**

63.      Due to Pavilion's ongoing and uncured defaults, the Trustee provided notice to Pavilion on October 5, 2022 that the Trustee has declared the outstanding principal balance and interest accrued on the Bonds and payments required to be made by Pavilion under § 3.2 of the Loan Agreement for the remainder of the term of the Loan Agreement to be immediately due and payable. A true and correct copy of the October 5, 2022 notice is attached hereto as **Exhibit M**.

64.      As of September 28, 2022, the amount due and owing by Pavilion under the Loan Agreement and the Leasehold Mortgage is **$26,980,000**, without defense, deduction, offset, recoupment, or counterclaim.

65.      Additional interest together with fees, charges and costs recoverable under the Bond Documents, have continued and continue to accrue on the Bonds.

66.      With this action, the Trustee is undertaking, without limitation, to exercise additional remedies available upon an Event of Default by Pavilion, including to foreclose the Leasehold Mortgage.

## COUNT ONE – MORTGAGE FORECLOSURE – PAVILION

67.      Paragraphs 1 through 66 of this Complaint are incorporated herein by reference.

68.      Pavilion executed the Loan Agreement, which is secured by the Leasehold Mortgage, in favor of the Trustee.

69.      Pavilion has defaulted on its obligations under the Leasehold Mortgage, the Loan Agreement, and the other Bond Documents.

70.      The Trustee is authorized by the Leasehold Mortgage and by Pennsylvania law to foreclose the Leasehold Mortgage in the event of a default by Pavilion.

71.    As of September 28, 2022, there is due and owing on the Loan the sum of $26,980,000, together with accruing interest and fees, charges and costs recoverable under the Bond Documents.

**WHEREFORE**, the Trustee asks that a judgment be entered in its favor as follows:

(1)    Against Pavilion for foreclosure of the Leasehold Mortgage in the amount of $26,980,000, together with additional accrued and accruing interest, fees, charges and costs recoverable under the Bond Documents, in a manner consistent with the relief to be awarded in the parallel lawsuit captioned Wilmington Trust, National Association, as Trustee of the $29,615,000 Philadelphia Authority for Industrial Development Senior Housing Revenue Bonds (The Pavilion) v. Pavilion Apartments Penn LLC and Kiryat Greenbriar, L.P.;

(2)    Consolidation with the parallel lawsuit captioned Wilmington Trust, National Association, as Trustee of the $29,615,000 Philadelphia Authority for Industrial Development Senior Housing Revenue Bonds (The Pavilion) v. Pavilion Apartments Penn LLC and Kiryat Greenbriar, L.P.;

(3)    For appointment of a receiver to take control of all operations of Pavilion in a manner in the best interests of the holders of the Bonds;

(4)    For such other and further relief as the Court in its discretion may deem equitable and just.

Dated:  October 6, 2022          /s/ *Raymond A. Quaglia*
                                Raymond A. Quaglia, PA ID No. 63146
                                James Mangiaracina, PA ID No. 329077
                                BALLARD SPAHR LLP
                                1735 Market Street, 51st Floor
                                Philadelphia, PA  19103
                                (215) 665-8500
                                quaglia@ballardspahr.com
                                mangiaracinaj@ballardspahr.com

DMFIRM #404976376 v1

William P. Wassweiler (pro hac vice forthcoming)
Karla M. Vehrs (pro hac vice forthcoming)
BALLARD SPAHR LLP
2000 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2119
(612) 371-3211
wassweilerw@ballardspahr.com
vehrsk@ballardspahr.com

Counsel for Plaintiff Wilmington Trust, National Association

12