Exhibit D

6

eRecorded in Philadelphia PA   Doc Id: 53089394
07/25/2016 08:41 AM    Page 1 of 34    Rec Fee: $222.00
Receipt#: 16-72503
Records Department    Doc Code: M

**THIS IS AN OPEN-END MORTGAGE SECURING FUTURE ADVANCES UP TO A MAXIMUM PRINCIPAL AMOUNT OF TWENTY NINE MILLION SIX HUNDRED FIFTEEN THOUSAND AND 00/100 DOLLARS ($29,615,000) PLUS ACCRUED INTEREST AND OTHER INDEBTEDNESS AS DESCRIBED IN 42 PA.C.S.A. § 8143.**

## OPEN END LEASEHOLD MORTGAGE AND ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT

**PAVILION APARTMENTS PENN LLC,**
as Mortgagor

in favor of

**WILMINGTON TRUST, NATIONAL ASSOCIATION,**
as Mortgagee

Dated July 5, 2016

This instrument prepared by and
when recorded return to:

Greenberg Traurig, LLP
2700 Two Commerce Square
2001 Market Street
Philadelphia, Pennsylvania 19103
Attention: Alexander L. Scarola, Esquire

*PHI 317577221v5*

# TABLE OF CONTENTS

(This Table of Contents is not a part of the Leasehold Mortgage and
Assignment of Leases and Rents and Security Agreement
but is for convenience of reference only)

Page

**ARTICLE I DEFINITIONS AND INTERPRETATIONS** ..........................................................4

Section 1.01.    Definitions .........................................................................................4
Section 1.02.    Interpretations ....................................................................................6

**ARTICLE II GENERAL COVENANTS AND PROVISIONS** ..............................................6

Section 2.01.    Certain Representations, Warranties and Covenants ...........................6
Section 2.02.    Instruments of Further Assurance; Recording ...................................7
Section 2.03.    Warranties of Title ..............................................................................7
Section 2.04.    General................................................................................................8
Section 2.05.    Releases of Collateral .........................................................................9
Section 2.06.    Subrogation.........................................................................................9
Section 2.07.    Leasehold Mortgage Provisions. ........................................................9

**ARTICLE III REMEDIES UPON EVENT OF DEFAULT** ..................................................13

Section 3.01.    Remedies Upon Event of Default ......................................................13
Section 3.02.    Right to Cure Defaults ......................................................................17
Section 3.03.    Appointment of a Receiver ...............................................................18
Section 3.04.    Application of Proceeds.....................................................................19
Section 3.05.    Remedies Not Exclusive....................................................................19
Section 3.06.    Right to Purchase ..............................................................................19
Section 3.07.    Waivers ..............................................................................................19

**ARTICLE IV ASSIGNMENT OF LEASES AND RENTS** ....................................................20

Section 4.01.    Covenants Relating to Leases and Rents; Liability of Mortgagee...........20
Section 4.02.    Collections .........................................................................................21
Section 4.03.    Execution of Leases ..........................................................................22
Section 4.04.    Not Additional Security ....................................................................22

**ARTICLE V MISCELLANEOUS** ...........................................................................................22

Section 5.01.    Discharge...........................................................................................22
Section 5.02.    No Waiver..........................................................................................22
Section 5.03.    Extension, Rearrangement, or Renewal of Obligations.....................23
Section 5.04.    Tenants at Will...................................................................................23
Section 5.05.    Notice.................................................................................................23
Section 5.06.    Severability........................................................................................23
Section 5.07.    Governing Law ..................................................................................24
Section 5.08.    Amendments......................................................................................24
Section 5.09.    Addresses...........................................................................................24

Section 5.10.   Time is of the Essence ..........................................................................24
Section 5.11.   Damage, Destruction, and Condemnation ...............................................24
Section 5.12.   Future Advances ....................................................................................24
Section 5.13.   Notices by Mortgagor .............................................................................25
Section 5.14.   Notices by Subordinate Lien Holders ......................................................25
Section 5.15.   Security Agreement ................................................................................25
Section 5.16.   Fixture Filing ..........................................................................................25
Section 5.17.   Financing Statements .............................................................................26
Section 5.18.   Inconsistencies ......................................................................................26

EXHIBIT A    DESCRIPTION OF LAND .............................................................. A-1
EXHIBIT B    PERMITTED ENCUMBRANCES.....................................................B-1

**OPEN END LEASEHOLD MORTGAGE AND
ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT**

**THIS LEASEHOLD MORTGAGE SECURES FUTURE ADVANCES**

**THIS OPEN END LEASEHOLD MORTGAGE AND ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT** (this "Mortgage"), dated July 5, 2016, from **PAVILION APARTMENTS PENN LLC** ("Mortgagor"), a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania, whose address is c/o JPC Charities 1230 Eriewood Drive Rocky River, OH 44116, in favor of **WILMINGTON TRUST, NATIONAL ASSOCIATION**, as trustee ("Mortgagee"), a national banking association whose address is Wilmington Trust, National Association, 15950 North Dallas Parkway, Suite 550, Dallas, Texas 75248;

**W I T N E S S E T H:**

**WHEREAS**, the Philadelphia Authority for Industrial Development (the "Authority") has adopted a bond resolution authorizing the issuance of its $29,615,000 aggregate principal amount Senior Housing Revenue Bonds (The Pavilion) Series 2016A and its Senior Housing Revenue Bonds (The Pavilion) Subordinate Series 2016B and authorizing the execution and delivery of a Loan Agreement, dated as of July 1, 2016 ("Loan Agreement"), between the Authority and the Mortgagor and the Trustee (as defined below), under the terms of which the Authority has agreed to loan the proceeds from the sale of the Bonds to Mortgagor to (a) fund the costs of the acquisition, renovation and equipping of a 295-unit multifamily senior residential rental housing facility in the City of Philadelphia, Pennsylvania (the "City"), (b) fund a Debt Service Reserve Fund for the Bonds and (c) pay certain costs of issuance of the Bonds; and

**WHEREAS**, the Bonds are being issued pursuant to a Trust Indenture, dated as of July 1, 2016 (the "Bond Indenture"), between the Authority and Wilmington Trust, National Association, as trustee (the "Trustee"); and

**WHEREAS**, in order to evidence its obligation to repay the loan of the proceeds of the Bonds under the Loan Agreement, Mortgagor has agreed to execute and deliver to the Authority and endorsed to the Trustee its Promissory Note (the "Note") in the original aggregate principal amount of $29,615,000, providing for payments sufficient in time and amount to enable the payment of the principal of and interest on the Bonds; and

**WHEREAS**, Mortgagor has agreed under the terms of the Bond Indenture to grant to the Trustee a first lien on and first security interest to all of Mortgagor's right, title and interest in and the Project (as defined in the Bond Indenture) and to assign and pledge to the Trustee, Mortgagor's leasehold interest in the Land on which the Project is located, and to further assign and pledge to Trustee certain rents and leases derived from the Project, as security for the obligations under the Bond Indenture and the Loan Agreement, including those evidenced by the Note;

1

**NOW, THEREFORE:**

Mortgagor, in consideration of the foregoing premises, the obligations hereinafter mentioned, the sum of Ten Dollars ($10.00) in hand paid, and other good and valuable consideration, all of which Mortgagor acknowledges receiving as legally sufficient consideration at or prior to the execution and delivery of this Mortgage, in order to secure the full and punctual payment and performance of the Note, according to its tenor and effect, and the other Obligations (as hereinafter defined), does hereby irrevocably and unconditionally grants, bargains, sells, conveys, mortgages and warrants to Mortgagee and its successors and assigns, and any future holder or holders of the Note, the following property, rights, titles, interests, and estates:

## GRANTING CLAUSE FIRST

The leasehold estate, together with any greater or additional estate in such real property as hereafter may be acquired by Mortgagor, and all other estates, rights, title, and interest of Mortgagor in, to, and under all those tracts or parcels of land situated in the City of Philadelphia, Pennsylvania, described in *Exhibit A* attached hereto (as the same may be supplemented from time to time) and incorporated herein by reference (the "Land"), (1) together with the Project, and all buildings, structures, additions, railroad spur tracks and sidings, and other improvements of every kind and description now or hereafter located on the Land or on any part or parcel thereof, and all extensions, betterments, and replacements thereof, with all and singular the tenements, hereditaments, servitudes, appurtenances, rights, powers, benefits, options, privileges, and immunities now or hereafter belonging or in anywise appertaining to the Land or Loan Agreement, (2) together with all and singular the easements and riparian and littoral rights now or hereafter thereunto belonging or in anywise appertaining, and including all rights of ingress to and egress from adjoining property (whether such rights now exist or subsequently arise), (3) together with all options related thereto, reversion or reversions and remainder and remainders with respect to the Land, (4) together with all development rights and credits, air rights, water, and water rights appurtenant to the Land, (5) together with the minerals, soil, flowers, shrubs, crops, trees, timber, and other emblements now or hereafter located on, under, or above the Land or any part or parcel thereof, (6) together with all of the water, sanitary, and storm sewer systems that are now or hereafter located by, over, and upon the Land, or any part and parcel thereof, which water system includes all water mains, service laterals, hydrants, valves and appurtenances, and which sewer system includes all sanitary sewer lines, including mains, laterals, manholes, and appurtenances, and (7) together with all highways, roads, streets, alleys, and other public thoroughfares bordering on or adjacent to the Land hereinbefore described, all land lying within such highways, roads, streets, alleys, and other public thoroughfares, all heretofore or hereafter vacated highways, roads, streets, alleys, and public thoroughfares and all strips and gores adjoining or within such property, and all paving for streets, roads, walkways, or entrance ways that are now or hereafter located on the Land or any part or parcel thereof, it being the intention of the parties hereto that, so far as may be permitted by law, all property of the character hereinabove described that is affixed or attached or annexed to the Land shall be and remain or become and constitute a portion of the Land and the collateral encumbered by and subject to the lien of this Mortgage (the leasehold estate and other property described in this **GRANTING CLAUSE FIRST** is hereinafter sometimes collectively referred to as the "Mortgaged Property").

2

## GRANTING CLAUSE SECOND

(a)      Any and all leases (together with any guaranties, letters of credit and other security related thereto), usufructs, tenant contracts, rental agreements, undertakings to lease, contracts to rent, and other agreements for use, occupancy, or possession now or hereafter affecting the Mortgaged Property or any portion thereof and any and all franchise agreements, agreements for the operation of or management of the Mortgaged Property, construction contracts, concessions, and other agreements, contracts, licenses, permits, and arrangements now or hereafter affecting or granting a possessory interest in the Mortgaged Property or any part thereof, together with all security therefor and any and all renewals, extensions, and modifications thereof and any guarantees of the obligations thereunder, whether written or oral and whether now existing or hereafter made, executed, or delivered (the property described in this subdivision (a) of **GRANTING CLAUSE SECOND** is hereinafter sometimes referred to as the "Leases"), and

(b)      all the right, title and interest of Mortgagor in and to the "Project Revenues," as defined in the Bond Indenture, including all of the rents, issues, profits, revenues, income, receipts, moneys, royalties, rights, and benefits now or hereafter accruing from the Mortgaged Property and from and in connection with Mortgagor's rights and title in, occupancy, use, or enjoyment of the Mortgaged Property, including, without limiting the generality of the foregoing, all rents, issues, profits, revenues, income, receipts, moneys, royalties, rights, and benefits now or hereafter accruing from and under any and all Leases, and all security deposits, damage deposits, and other funds paid to Mortgagor by any lessee, tenant, licensee, permittee, or other obligee under any of the Leases, whether paid in a lump sum or installments, and proceeds of the conversion, whether voluntary or involuntary, of the Mortgaged Property into cash or liquidated claims, including without limitation proceeds of casualty and title insurance, condemnation awards, judgments, settlements, and performance, labor, and material payment bonds relating to the Mortgaged Property (the property described in this subdivision (b) of **GRANTING CLAUSE SECOND** is hereinafter sometimes referred to as the "Rents").

**IN EACH CASE,** whether now owned or hereafter acquired by Mortgagor and howsoever its interest therein may arise or appear (whether by ownership, leasehold, lien, security interest, claim, or otherwise) and whether due or to become due and whether or not earned by performance;

**TO HAVE AND TO HOLD** the Mortgaged Property, the Rents, and the Leases and all parts, rights, members and appurtenances thereof, to the use, benefit and behalf of Mortgagee; and Mortgagor warrants that it is lawfully seized and possessed of the Mortgaged Property, and has good right to convey its interest in the same, that the same is unencumbered except for "Permitted Encumbrances" set forth in **Exhibit B**, attached hereto and by this reference thereto incorporated herein and made a part hereof (the "Permitted Encumbrances"), and that Mortgagor does warrant and will forever defend the title thereto against the claims of all persons whomsoever, except as to the Permitted Encumbrances.

Upon payment of all sums secured by the Note and this Mortgage, and the performance of all the terms, conditions and covenants contained therein, this Mortgage shall be void. Mortgagor shall pay all costs of recordation of any cancellation or satisfaction hereof.

3

Mortgagor **HEREBY FURTHER COVENANTS AND AGREES** with Mortgagee as follows:

**ARTICLE I**
**DEFINITIONS AND INTERPRETATIONS**

**Section 1.01.**     **Definitions**

The following words and terms shall have the meanings set forth below, unless the context clearly indicates otherwise.  Certain words and terms used in this Mortgage have the meaning given them in Section 1.01 of the Bond Indenture.  When used herein, such words and terms will have the meanings given to them by the language employed in Section 1.01 of the Bond Indenture defining such words and terms, unless the context or use clearly indicates otherwise.

"Bonds" is defined in the recitals of this Mortgage.

"Bond Indenture" means the Bond Indenture defined in the recitals of this Mortgage, as amended, re-stated, modified, or replaced from time to time.

"Collateral" means the Mortgaged Property, the Leases and the Rents.

"County" means Philadelphia County, Pennsylvania.

"Event of Default" is defined in the Bond Indenture.

"Ground Lessor" means Kiryat Greenbriar, a Pennsylvania limited partnership, as landlord under the Lease Agreement.

"Mortgagee" means the Authority under the Bond Indenture, together with its successors and assigns.

"Mortgagor" means the party named as such on the first page of this Mortgage, its legal representatives, successors, and assigns.

"Mortgagor Contracts" means, collectively, the Loan Agreement, the notes issued thereunder and this Mortgage, other security deeds and all documents, instruments, and agreements related to any of the foregoing.

"Land" is defined in **GRANTING CLAUSE FIRST** of this Mortgage.

"Lease Agreement" means that certain Lease Agreement dated November 28, 1973, between Mortgagor as tenant and Kiryat Greenbriar as landlord, pertaining to the Land, as amended by the Amendment to Lease, dated September 28, 1983, the Second Amendment to Lease, dated as of December 1, 2002 and the Third Amendment to Lease dated on or about July 5, 2016.

"Leases" is defined in **GRANTING CLAUSE SECOND** of this Mortgage.

4

"Lien" means any interest in the Collateral securing an obligation owed to, or a claim by, a Person other than the owner of any such Collateral, whether such interest is based on the common law, statute, or contract, and including, but not limited to, the security interest or lien arising from a security agreement, mortgage, capital lease, encumbrance, charge, pledge, conditional sale, or trust receipt or a lease, consignment, or bailment for security purposes. The term "Lien" shall include reservations, exceptions, encroachments, easements, rights-of-way, covenants, conditions, restrictions, leases, and other title exceptions and encumbrances affecting the Mortgaged Property. For the purpose of this Mortgage, Mortgagor shall be deemed to be the owner of any Mortgaged Property that it has acquired or holds subject to a conditional sale agreement or other arrangement pursuant to which title to such Mortgaged Property has been retained by or vested in some other person for security purposes.

"Loan Agreement" means the Loan Agreement defined in the recitals of this Mortgage, as amended, re-stated, modified, or replaced, from time to time.

"Mortgage" means this Open-End Leasehold Mortgage and Assignment of Leases and Rents and Security Agreement, as the same may be modified, amended, or supplemented from time to time.

"Mortgaged Property" is defined in **GRANTING CLAUSE FIRST** of this Mortgage.

"Note" is defined in the recitals of this Mortgage.

"Obligations" means, collectively, (i) the indebtedness evidenced by the Note in the original aggregate principal amount of twenty nine  million six hundred fifteen thousand dollars ($29,615,000) payable to the order of the Authority with the final payment being due on December 1, 2051, together with any and all renewals, modifications, consolidations, replacements and extensions thereof; (ii) all obligations, liabilities, covenants, agreements, and duties owing, arising, due, or payable from Mortgagor to Mortgagee of any kind or nature arising from or in connection with the Mortgagor Contracts, present or future, whether or not evidenced by any note or other instrument, whether direct or indirect (including those acquired by assignment), absolute or contingent, primary or secondary, due or to become due, now existing or hereafter acquired, together with all renewals, extensions, replacements, consolidations, and modifications thereof, in each case whether for principal, interest, fees, expenses, or any and all additional advances made by or on behalf of Mortgagee to protect or preserve the Collateral or the lien and security interest created by this Mortgage and the Bond Indenture in the Collateral, for taxes, assessments, or insurance premiums, or for the performance of any of Mortgagor's obligations under the Mortgagor Contracts or otherwise, and (iii) all obligations of Mortgagor under the Mortgagor Contracts.

"Permitted Encumbrances" mean the items set forth in *Exhibit B* hereto.

"Person" means an individual, a corporation, a partnership, a limited liability company, an association, a joint stock company, a joint venture, a trust, an unincorporated organization, a governmental unit or an agency, a political subdivision or instrumentality thereof, or any other group or organization of individuals.

"Personal Property" is defined in Section 3.01 of this Mortgage.

5

"Project" means the 295-unit multifamily residential rental housing facility that is owned by Mortgagor and is located on the Land that has been leased to Mortgagor pursuant to the Lease Agreement.

"Rents" is defined in **GRANTING CLAUSE SECOND** of this Mortgage.

"State" means the Commonwealth of Pennsylvania.

**Section 1.02.      Interpretations**

Except as otherwise defined herein, terms used in this Mortgage shall have the meaning assigned to such terms in the Loan Agreement and the Bond Indenture.  The table of contents and article and section headings of this Mortgage are for reference purposes only and shall not affect its interpretation in any respect.  The use of the masculine, feminine, or neuter gender is for convenience only and shall be deemed and construed to include correlative words of the masculine, feminine, or neuter gender, as appropriate.

**ARTICLE II**
**GENERAL COVENANTS AND PROVISIONS**

**Section 2.01.      Certain Representations, Warranties and Covenants**

(a)      Mortgagor represents and warrants to Mortgagee that (i) the Loan Agreement and the Bond Indenture each is unmodified and in full force and effect, (ii) Mortgagor has good and marketable leasehold title to the Land pursuant to the Lease Agreement, (iii) all Basic Loan Payments under the Lease Agreement and other charges under the Lease Agreement and the Bond Indenture have been paid to the extent they are payable to the date hereof, (iv) Mortgagor enjoys the quiet and peaceful possession of the property demised by the Lease Agreement, (v) Mortgagor is not in default under any of the terms of the Lease Agreement and there are no circumstances which, with the passage of time or the giving of notice or both, would constitute an event of default by Mortgagor thereunder, and (vi) to Mortgagor's actual knowledge, the lessor thereunder is not in default under any of the terms or provisions thereof on the part of the lessor to be observed or performed (but this statement is made for the benefit of and may only be relied upon by Mortgagee).  Mortgagor shall promptly pay, when due and payable, the Basic Payments and other charges payable pursuant to the Lease Agreement, and will timely perform and observe all of the other terms, covenants and conditions required to be performed and observed by Mortgagor as lessee under the Lease Agreement.  Mortgagor shall notify Mortgagee in writing of any default by Mortgagor in the performance or observance of any terms, covenants or conditions on the part of Mortgagor to be performed or observed under the Loan Agreement or the Bond Indenture within ten (10) days after Mortgagor knows of such default.  Mortgagor shall, promptly following the receipt thereof, deliver a copy of any notice of default given to Mortgagor by the Authority pursuant to the Loan Agreement.

(b)      So long as any of the Obligations remain unpaid or unperformed, the fee title to and the leasehold estate in the premises subject to the Bond Indenture shall not merge but shall always be kept separate and distinct notwithstanding the union of such estates in the lessor or Mortgagor, or in a third party, by purchase or otherwise.  If Mortgagor acquires the fee title or any other estate, title or interest in the property demised by the Lease Agreement, or any part

6

thereof, the lien of this Mortgage shall attach to, cover and be a lien upon such acquired estate, title or interest and the same shall thereupon be and become a part of the Mortgaged Property with the same force and effect as if originally encumbered hereby. Mortgagor agrees to execute all instruments and documents that Mortgagee may reasonably require to ratify, confirm and further evidence the lien of this Mortgage on the acquired estate, title or interest.

(c)    If the Lease Agreement shall be terminated prior to the natural expiration of its term due to default by Mortgagor or any tenant thereunder, and if, pursuant to the provisions of the Lease Agreement, Mortgagee or its designee shall acquire from the lessor a new lease of the premises subject to the Bond Indenture, Mortgagor shall have no right, title or interest in or to such new lease or the leasehold estate created thereby, or renewal privileges therein contained.

(d)    Notwithstanding anything to the contrary contained herein, this Mortgage shall not constitute an assignment of the Lease Agreement within the meaning of any provision thereof prohibiting its assignment and Mortgagee shall have no liability or obligation thereunder by reason of its acceptance of this Mortgage. Mortgagee shall be liable for the obligations of Mortgagor arising out of the Lease Agreement for only that period of time for which Mortgagee is in possession of the premises demised thereunder or has acquired, by foreclosure or otherwise, and is holding all of Mortgagor's right, title and interest therein.

### Section 2.02.    Instruments of Further Assurance; Recording

(a)    Mortgagor covenants that it will do, make, execute, and deliver, or cause to be done, made, executed, and delivered, such amendments or supplements hereto and such further acts, assurances, documents, instruments, certificates, agreements, letters, representations, and transfers as Mortgagee may reasonably require to cure any defect in the Obligations or any other writings secured hereby or executed in connection herewith, in the execution hereof or thereof, or in the description of the Collateral or to better grant, bargain, convey, transfer, assign, and sell unto Mortgagee the Mortgaged Property, Rents, Leases and any other Collateral granted, bargained, conveyed, transferred, assigned, and sold hereunder, or intended so to be, or to properly evidence or give notice of the Obligations or of each lien securing payment of the Obligations or to perfect and protect the lien and security interest created by this Mortgage.

(b)    Mortgagor covenants that (i) upon the execution and delivery of this Mortgage and thereafter, from time to time, they shall cause this Mortgage and each amendment and supplement hereto (or a memorandum with respect hereto or to such amendment or supplement) to be filed, registered, and recorded and to be re-filed, re-registered, and re-recorded in such manner and in such places as may be required by any present or future law or by Mortgagee in order to publish notice of and to fully protect and perfect the lien and security interest of this Mortgage upon the Collateral; and (ii) it shall perform or cause to be performed from time to time any other act as required by law, and shall execute or cause to be executed any and all instruments of further assurance that may be necessary for such publication, protection, and perfection.

### Section 2.03.    Warranties of Title

7

(a)     Mortgagor warrants that it has good and marketable leasehold title to the Land and good and marketable fee simple title to the other Collateral described and conveyed pursuant hereto and all rights and interests relating thereto, that it is lawfully seized and possessed of the Mortgaged Property, and that it has the right to convey and assign the Collateral, and that such Collateral is free and clear of every mortgage, lien, encumbrance, or charge, other than Permitted Encumbrances.  Mortgagor has acquired or will lawfully acquire and own the Collateral and, subject to the provisions of this Mortgage concerning release of property, will forever warrant and defend the title to such Collateral unto Mortgagee against the claims and demands of all persons whomsoever, except those claiming under Permitted Encumbrances.

(b)     Mortgagor will proceed with reasonable diligence to correct any defect in title to the Collateral should any such defect be found to exist after the execution and delivery of this instrument, and in this connection, should it be found after the execution and delivery of this instrument that there exists upon the Collateral any lien or encumbrance, other than a Permitted Encumbrance, equal or superior or subordinate in rank or priority to the lien and security interest created by this Mortgage, or should any such lien or encumbrance hereafter arise, then, unless Mortgagee is the only holder of such other lien or encumbrance, or Mortgagee shall have given specific prior written consent to the creation or continuation thereof, Mortgagor will promptly discharge and remove any such lien or encumbrance from the Collateral.

(c)     In order to contest any liens, Mortgagor shall furnish Mortgagee with a bond or cash deposit equal to at least the amount so contested and with an opinion of Counsel stating that by nonpayment of any such items the lien of this Mortgage will not be endangered and neither the Collateral nor any part thereof will be subject to imminent loss or forfeiture. The proceeds of the bond or the cash deposit may be used by Mortgagee to satisfy the lien if action is taken to enforce the lien and such action is not stayed. The bond or cash deposit shall be returned to Mortgagor if the lien is successfully contested. If Mortgagor is unable or otherwise fails to obtain such a bond or provide such a cash deposit and such an opinion of Counsel, Mortgagor shall cause to be satisfied and discharged promptly all such items by payment thereof. If Mortgagor is unable or otherwise fails to obtain such a bond or cash deposit and an opinion of Counsel, or to satisfy and discharge the lien, Mortgagee may, but shall be under no obligation to, satisfy and discharge the lien by payment thereof or provide security which causes the claimant to release the lien against the Collateral, and all amounts so paid by Mortgagee shall be treated as an advance to Mortgagor payable in accordance with the Loan Agreement.

### Section 2.04.     General

For the purpose of better securing payment of the Obligations, Mortgagor covenants and agrees with Mortgagee that:

(a)     Mortgagor shall not permit any mechanics' or materialmen's or other statutory liens to be perfected or remain against the Collateral unless being contested in accordance with the provisions of the Bond Indenture and this Mortgage.

(b)     Mortgagor shall permit Mortgagee and its agents, representatives, and employees at all reasonable times and upon reasonable prior notice to go upon, examine, inspect, and remain on the Mortgaged Property, and shall furnish to Mortgagee on

8

reasonable request all pertinent information in regard to the construction, development, and operation of the Mortgaged Property.

(c)    Mortgagor shall notify Mortgagee in writing promptly of the commencement of any legal proceedings affecting the Collateral or any part thereof and shall take such action as may be necessary to preserve Mortgagee's rights affected thereby.

(d)    Promptly upon demand by Mortgagee, Mortgagor shall pay all reasonable costs and expenses heretofore or hereafter incurred by Mortgagee for legal, architectural, or engineering services rendered to or for the benefit of Mortgagee in connection with the enforcement of any of Mortgagee's rights or remedies hereunder.

If Mortgagor should fail to comply with any of the agreements, covenants, or obligations of Mortgagor under this or any other instrument securing, guaranteeing, or otherwise relating to the Obligations or any part thereof, then Mortgagee may perform the same for the account and at the expense of Mortgagor but shall not be obligated to do so; any and all expenses incurred or paid in so doing shall be payable by Mortgagor to the one making the advancement with interest at the rate quoted by Mortgagee as its prime rate plus 2%, from the date the same was incurred or paid; the amount thereof and accrued interest thereon shall be due and payable on demand and shall be secured by and under this Mortgage; and the amount and nature of such expense and the time when paid shall be fully established by a certificate of Mortgagee.

**Section 2.05.    Releases of Collateral**

Any Collateral that is sold or disposed of in accordance with the terms and conditions of Section 6.16 of the Loan Agreement may be released from the lien of this Mortgage.

**Section 2.06.    Subrogation**

Mortgagee shall be subrogated to all right, title, equity, liens, and claims of all Persons to whom Mortgagee has paid or pays money, in settlement of claims, liens, or charges or in acquisition of right or title for Mortgagor's benefit under this Mortgage or for the benefit and account of Mortgagor.

**Section 2.07.    Leasehold Mortgage Provisions.**

(a)    The Mortgagor warrants and covenants that:

(i)    the Lease Agreement is a valid and subsisting lease of the property therein described and purported to be demised thereby for the term therein set forth, is in full force and effect in accordance with the terms thereof, and has not been modified, except such modifications of which the Mortgagee has received copies and approved in writing;

(ii)    there are no defaults under the Lease Agreement not heretofore waived by the parties thereto and all rents payable by the Mortgagor under the

9

Lease Agreement have been paid to the extent they were due and payable prior to the date hereof;

(iii)    there exists no event or condition which, with the giving of notice or the passage of time, or both, could become a default or an event of default under the Lease Agreement;

(iv)    the Mortgagor is the owner and holder of the Lease Agreement and the leasehold estate created thereby;

(v)    the Mortgagor will not, without the prior written consent of the Mortgagee, modify, assign, supplement, release, surrender or terminate or permit the termination (whether voluntary or involuntary) of the Lease Agreement or any other lease of the Mortgaged Property now in existence or hereafter created and any attempt to do so shall be void and of no force and effect; and

(vi)    the Mortgagor shall advise the Mortgagee in writing of the receipt of any communication or notice (written or otherwise) within twenty-four (24) hours of receipt, (i) given by the Lessor to the Mortgagor of any default in the performance or observance of any of the terms, covenants or conditions of the Lease Agreement on the part of the Mortgagor, as lessee thereunder, to be performed and/or observed, or (ii) any summons, notice or legal process which may affect the validity of the Lease Agreement, or the terms thereof, or which may affect either the Mortgagor's interest in or possession of the Mortgaged Property or any part thereof, and will contemporaneously therewith deliver to the Mortgagee a true copy of each such notice when such communication or notice is written. The Mortgagor will furnish to the Mortgagee, immediately upon written request, any and all information concerning the Mortgagor's performance of its duties and obligations under the Lease Agreement. The Mortgagor shall deliver to the Mortgagee true and complete copies of any and all notices, agreements and other documentary evidence showing the Mortgagor's compliance with the terms of the Lease Agreement.

(vii)    The Mortgagor covenants and agrees that it will at all times fully perform and comply with all agreements, covenants, terms and conditions imposed upon or assumed by it as tenant under the Lease Agreement, and that if the Mortgagor shall fail so to do the Mortgagee may (but shall not be obligated to) take any action the Mortgagee deems necessary or desirable to prevent or to cure any default by the Mortgagor in the performance of or compliance with any of the Mortgagor's covenants or obligations under the Lease Agreement. Upon receipt by the Mortgagee of any written notice of default by the Mortgagor under the Lease Agreement, the Mortgagee may rely thereon and, at the direction of the Mortgagee, take any action as aforesaid to cure such default even though the existence of such default or the nature thereof be questioned or denied by the Mortgagor or by any party on behalf of the Mortgagor. The Mortgagor hereby expressly grants to the Mortgagee, and agrees that the Mortgagee shall have, the absolute and immediate right to enter in and upon the Mortgaged Property or any

10

part thereof to such extent and as often as the Mortgagee, in its sole discretion, deems necessary or desirable in order to prevent or to cure any such default by the Mortgagor under the Lease Agreement. The Mortgagee, with or without possession, may, but shall not be obligated to, perform the Mortgagor's obligations under the Lease Agreement and/or may pay and expend such sums of money as the Mortgagee in its sole discretion deems necessary for any such purpose, and the Mortgagor hereby agrees to pay to the Mortgagee, immediately and without demand, all such sums so paid and expended by the Mortgagee together with interest thereon from the date of each such payment at the Default Rate. All sums so paid and expended by the Mortgagee, and the interest thereon, shall be added to and be secured by the lien of this Mortgage. In addition to the other remedies set forth in this Mortgage, the Mortgagee shall have all the rights and remedies granted to a "leasehold mortgagee" under the Lease Agreement.

(b)     The Mortgagor further covenants and agrees:

(i)     That, unless the Mortgagee shall otherwise expressly consent in writing, the fee title to the Land and the leasehold estate demised by the Lease Agreement shall not merge but shall always remain separate and distinct, notwithstanding the union of such estates either in the Ground Lessor or in the Mortgagor, or in a third party by purchase or otherwise. If the Mortgagor acquires the fee title or any other estate, title or interest in the Land, or any part thereof, the lien of this Mortgage shall attach to, cover and be a lien upon such acquired estate, title or interest and the same shall thereupon be and become a part of the Property with the same force and effect as if specifically encumbered herein. The Mortgagor agrees to execute all instruments and documents which the Mortgagee may require to ratify, confirm and further evidence the Mortgagee's lien on the acquired estate, title or interest.

(ii)     That the Mortgagor shall enforce its rights under the Lease Agreement and shall use its best efforts to obtain and deliver to the Mortgagee within ten (10) days after written demand by the Mortgagee, an estoppel certificate from the Ground Lessor under the Lease Agreement setting forth (A) that the Lease Agreement has not been modified or, if it has been modified, the date of each modification (together with copies of each such modification), (B) the amount of the basic rent and other charges payable under the Lease Agreement, (C) the date to which all rental charges have been paid by the tenant under the Lease Agreement, and (D) whether there are any alleged defaults of the tenant under the Lease Agreement and, if there are, setting forth the nature thereof in reasonable detail.

(iii)     Furthermore, the Mortgagor hereby appoints the Mortgagee and each of the Mortgagee's officers its true and lawful attorneys in fact to execute and deliver all the instruments and documents described in the clause above in the name and on behalf of the Mortgagor. This power, being coupled with an interest, shall be irrevocable as long as any amount secured hereby remains unpaid.

11

(iv)    Notwithstanding anything to the contrary contained herein, this Mortgage shall not constitute an assignment of the Lease Agreement within the meaning of any provision thereof prohibiting its assignment and the Mortgagee shall have no liability or obligation thereunder by reason of its acceptance of this Mortgage. The Mortgagee shall be liable for the obligations of the tenant arising under the Lease Agreement for only the period of time during which the Mortgagee is in actual possession of the leased premises or has acquired, by foreclosure or otherwise, and is holding all of the Mortgagor's right, title and interest therein, and shall not be liable for any periods before or after such period.

(v)    The Mortgagor hereby conveys and assigns to the Mortgagee all of its rights, privileges and prerogatives under the Lease Agreement to surrender, terminate, cancel, assign, modify, change, supplement, alter or amend the Lease Agreement, which rights, privileges and prerogatives shall be exercised by the Mortgagee at the written direction of the Mortgagee.

(c)    The Mortgagor agrees that:

(i)    If there shall be filed by or against the Mortgagor a petition under the Bankruptcy Code, 11 U.S.C. § 101 et seq., or any successor or similar statute, or similar state law (the "Code") and if the Mortgagor, as lessee under the Lease Agreement, or the Mortgagor's bankruptcy trustee (the "Bankruptcy Trustee") shall decide to reject the Lease Agreement pursuant to the Code, the Mortgagor and/or the Bankruptcy Trustee shall give the Mortgagee not less than forty-five (45) days prior written notice of the date of which the Mortgagor and/or the Bankruptcy Trustee shall apply to the Bankruptcy Court for the authority to reject the Lease Agreement. The Mortgagee shall have the right, but not the obligation, to serve upon the Mortgagor or the Bankruptcy Trustee within such forty five (45) day period a notice stating that (A) the Mortgagee demands that the Mortgagor and/or the Bankruptcy Trustee assign the Lease Agreement to the Mortgagee pursuant to the Code and (B) the Mortgagee covenants to cure or provide adequate assurance of prompt cure of all curable defaults and provide adequate assurance of future performance under the Lease Agreement. If the Mortgagee serves upon the Mortgagor and/or the Bankruptcy Trustee the notice described in the preceding sentence, the Mortgagor and/or the Bankruptcy Trustee shall not seek to reject the Lease Agreement and shall comply with the demand provided for in clause (A) of the preceding sentence within forty-five (45) days after the notice shall have been given subject to the performance by the Mortgagee of the covenant provided in clause (B) of the preceding sentence.

(ii)    Effective upon the entry of an order for relief in respect of the Mortgagor under the Code, the Mortgagor and the Bankruptcy Trustee hereby assign and transfer to the Mortgagee a non-exclusive right to apply to the Bankruptcy Court under the Code on behalf of any and all parties for an order extending the period during which the Lease Agreement may be rejected or assumed.

12

(iii)     The lien of this Mortgage attaches to all the Mortgagor's and the Bankruptcy Trustee's rights and remedies at any time arising under or pursuant to the Code, including, without limitation, all of the Mortgagor's rights to remain in possession of the Property thereunder.

(iv)     The Mortgagor agrees that in the event the Ground Lessor, or its successors and assigns, files or has filed against it a petition under the Code, the Mortgagor shall not, without the Mortgagee's prior written consent, elect to treat the Lease Agreement as terminated or rejected under the Code.  Any such election made without the Mortgagee's prior written consent shall be null and void and of no effect.  In addition to the foregoing, the Mortgagor hereby irrevocably assigns to the Mortgagee the Mortgagor's right to elect to treat the Lease Agreement as terminated or rejected under the Code and the Mortgagee may exercise the rights hereunder at any time, which right shall be exercised by the Mortgagee at the Mortgagee's direction.

(v)     The Mortgagor hereby unconditionally assigns, transfers and sets over to the Mortgagee all of the Mortgagor's claims and rights to the payment of damages arising from any rejection by the Ground Lessor of the Lease Agreement under the Code.  The Mortgagee, acting upon the Mortgagee's direction, shall have the right to proceed in its own name or in the name of the Mortgagor in respect to any claim, suit, action or proceeding relating to the rejection of the Lease Agreement, including, without limitation, the right to file and prosecute, to the exclusion of the Mortgagor, any proofs of claim, complaints, motions, applications, notices and other documents, in any case in respect of the Ground Lessor under the Code.  This assignment constitutes a present, irrevocable and unconditional assignment of the foregoing claims, rights, and remedies.

### ARTICLE III
### REMEDIES UPON EVENT OF DEFAULT

**Section 3.01.     Remedies Upon Event of Default**

Upon the occurrence of any Event of Default, Mortgagor agrees that Mortgagee may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Mortgagor and in and to the Mortgaged Property, including, but not limited to, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Mortgagee may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Mortgagee:

(a)     declare the entire unpaid principal balance of the Note together with all other Obligations to be immediately due and payable, which unpaid sums shall bear interest at the Default Rate from the due date until paid;

(b)     with or without entry, institute proceedings, by judicial action, advertisement or such other statutory procedures as are available in the State, for the complete or partial foreclosure of this Mortgage under any applicable provision of law in

13

which case the Mortgaged Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner, any partial foreclosure to be subject to the continuing lien and security interest of this Mortgage for the balance of the Obligations not then due, unimpaired and without loss of priority;

(c)     sell for cash or upon credit the Mortgaged Property or any part thereof and all estate, claim, demand, right, title and interest of Mortgagor therein and rights of redemption thereof, pursuant to power of sale, judicial decree or otherwise, at one or more sales, as an entirety or in one or more parcels; or

(d)     institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, in the Note or in the other Bond Documents;

(e)     recover judgment on the Note either before, during or after any proceedings for the enforcement of this Mortgage or the other Bond Documents;

(f)     enter into or upon the Mortgaged Property, either personally or by its agents, nominees or attorneys and dispossess Mortgagor and its agents and servants therefrom without liability for trespass, damages or otherwise and exclude Mortgagor and its agents or servants wholly therefrom, and take possession of all books, records and accounts relating thereto and Mortgagor agrees to surrender possession of the Mortgaged Property and of such books, records and accounts to Mortgagee upon demand, and thereupon Mortgagee may exercise all rights and powers of Mortgagor with respect to the Mortgaged Property including, without limitation:

(g)     the right to use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Mortgaged Property and conduct the business thereat;

(i)     the right to make or complete any construction, alterations, additions, renewals, replacements and improvements to or on the Mortgaged Property as Mortgagee deems advisable;

(ii)     the right to make, cancel, enforce or modify leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents (defined below) of the Mortgaged Property and every part thereof; and

(iii)     require Mortgagor to pay monthly in advance to Mortgagee, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Mortgaged Property as may be occupied by Mortgagor;

(h)     require Mortgagor to vacate and surrender possession of the Mortgaged Property to Mortgagee or to such receiver and, in default thereof, Mortgagor may be evicted by summary proceedings or otherwise;

14

(i)     apply the receipts from the Mortgaged Property, and/or any unearned insurance premiums paid to Mortgagee upon the surrender of any insurance policies maintained pursuant to the Loan Agreement (it being agreed that Mortgagee shall have the right to surrender such insurance policies upon the occurrence of an Event of Default), to the payment of the Obligations, in such order, priority and proportions as Mortgagee shall deem appropriate in its sole discretion;

(j)     exercise any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing:

(i)     the right to take possession of the Collateral which consists of personal property pledged or any part thereof, and to take such other measures as Mortgagee may deem necessary for the care, protection and preservation of the Collateral, and

(ii)     request Mortgagor at its expense to assemble the Collateral and make it available to Mortgagee at a convenient place acceptable to Mortgagee. Any notice of sale, disposition or other intended action by Mortgagee with respect to the Collateral sent to Mortgagor in accordance with the provisions hereof at least ten (10) days prior to such action, shall constitute commercially reasonable notice to Mortgagor.

In the event of a sale, by foreclosure, power of sale, or otherwise, of less than all of the Mortgaged Property, this Mortgage shall continue as a lien and security interest on the remaining portion of the Property unimpaired and without loss of priority.

With respect to the portion of the Collateral constituting personal property or fixtures (the "Personal Property") in which a security interest is herein granted, Mortgagor shall have the right to foreclose the lien and security interest created under this Mortgage by any available judicial procedure or without judicial process; to enter any Mortgaged Property where any of the Personal Property may be located for the purpose of taking possession of or removing the same; to sell, assign, lease, or otherwise dispose of the Personal Property, or any part thereof, either at public or private sale, in lots or in bulk, for cash or credit or otherwise, with or without representations or warranties, and upon such terms as shall be acceptable to Mortgagee, all at Mortgagee's sole option and as Mortgagee, in its sole discretion, may deem advisable, and Mortgagee may bid or become a purchaser at any such sale, free from any right of redemption, which is hereby expressly waived by Mortgagor, and Mortgagee shall have the right at its option to apply or credit the amount of all or any part of the Obligations against the purchase price bid by Mortgagee at any such sale.  If notification to Mortgagor of intended disposition by Mortgagee of any of the Personal Property is required by law, such notification shall be deemed to have been reasonably and properly given if personally delivered to Mortgagor or deposited in the United States mail with postage prepaid, duly addressed to Mortgagor at the address specified for notices to Mortgagor in this Mortgage, at least ten (10) business days prior to such disposition. Mortgagor shall be liable to Mortgagee and shall pay to Mortgagee on demand any deficiency that may remain after such sale, disposition, collection, or liquidation of the Personal Property, and Mortgagee in turn agrees to remit to Mortgagor any surplus remaining after the

15

Obligations have been paid in full. If any of the Personal Property shall require repairing, maintenance, preparation, or the like, or is in process or other unfinished state, Mortgagee shall have the right, but shall not be obligated, to do such repairing, maintenance, preparation, processing, or completion of manufacturing for the purpose of putting the same in such saleable form as Mortgagee shall deem appropriate, but Mortgagee shall have the right to sell or dispose of such Personal Property without such processing. Mortgagor shall, at Mortgagee's request, assemble all the Personal Property and make it available to Mortgagee at places within any county in which the Collateral, or a part thereof, is located, whether at the Mortgaged Property or elsewhere, and shall make available to Mortgagee the Mortgaged Property for the purpose of Mortgagee's taking possession of the Personal Property or of removing or putting the Personal Property in saleable form. To facilitate the exercise by Mortgagee of the rights and remedies set forth in this paragraph, Mortgagor hereby constitutes Mortgagee or its agents, or any other Person whom Mortgagee may designate, attorney-in-fact for Mortgagor, at Mortgagor's cost and expense, to exercise all or any of the following powers, which appointment, being coupled with an interest, shall be irrevocable, shall continue until the Obligations have been paid and satisfied in full, and shall be in addition to any other rights and remedies that Mortgagee may have: (i) to remove from the Mortgaged Property where the same shall be located any and all documents, instruments, files, and records, and any receptacles and cabinets containing the same, relating to the Personal Property, and Mortgagee may, at Mortgagor's cost and expense, use such of the personnel, supplies, and space of Mortgagor at Mortgagor's place of business as may be necessary to properly administer and control the Personal Property and realizations thereon; and (ii) to take or bring in Mortgagee's name or the name of Mortgagor all steps, actions, suits, or proceedings deemed by Mortgagee necessary and desirable to realize upon the Personal Property. MORTGAGOR HEREBY WAIVES ANY AND ALL RIGHTS MORTGAGOR MAY HAVE TO NOTICE OR HEARING PRIOR TO SEIZURE BY MORTGAGEE OF THE PERSONAL PROPERTY, WHETHER BY WRIT OF POSSESSION OR OTHERWISE.

Nothing herein shall limit Mortgagee from exercising any and all other remedies available to it at law or in equity or under any of the Mortgagor Contracts.

No delay or omission by Mortgagee in the exercise of any rights or remedies arising under this Mortgage, the Note or any other Loan Document at any time following the happening of an Event of Default shall constitute a waiver of the right of Mortgagee to exercise such rights and remedies at a later time by reason of such Event of Default or by reason of any subsequently occurring Event of Default.

FOR THE PURPOSE OF OBTAINING POSSESSION OF THE MORTGAGED PROPERTY UPON THE OCCURRENCE OF ANY EVENT OF DEFAULT, MORTGAGOR HEREBY AUTHORIZES AND EMPOWERS ANY ATTORNEY OF ANY COURT OF RECORD IN THE COMMONWEALTH OF PENNSYLVANIA OR ELSEWHERE AS ATTORNEY FOR MORTGAGOR AND ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR, TO CONFESS JUDGMENT IN EJECTMENT AND CONFESS JUDGMENT FOR RECOVERY OF POSSESSION OF THE MORTGAGED PROPERTY AND TO APPEAR FOR AND CONFESS JUDGMENT AGAINST MORTGAGOR, AND ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR IN FAVOR OF MORTGAGEE FOR RECOVERY BY MORTGAGEE OF POSSESSION THEREOF, FOR WHICH THIS MORTGAGE, OR A COPY THEREOF VERIFIED BY AFFIDAVIT, SHALL BE

16

SUFFICIENT WARRANT; AND THEREUPON A WRIT OF POSSESSION MAY IMMEDIATELY ISSUE FOR POSSESSION OF THE MORTGAGED PROPERTY, WITHOUT ANY PRIOR WRIT OR PROCEEDING WHATSOEVER AND WITHOUT ANY STAY OF EXECUTION.  IF FOR ANY REASON AFTER SUCH ACTION HAS BEEN COMMENCED IT SHALL BE DISCONTINUED, OR POSSESSION OF THE MORTGAGED PROPERTY SHALL REMAIN IN OR BE RESTORED TO MORTGAGOR, MORTGAGEE SHALL HAVE THE RIGHT FOR THE SAME DEFAULT OR ANY SUBSEQUENT DEFAULT TO BRING ONE OR MORE FURTHER ACTIONS TO CONFESS JUDGMENT IN EJECTMENT AND CONFESS JUDGMENT FOR RECOVERY OF POSSESSION OF THE MORTGAGED PROPERTY.  MORTGAGEE MAY BRING AN ACTION TO CONFESS JUDGMENT IN EJECTMENT AND TO CONFESS JUDGMENT FOR RECOVERY OF POSSESSION OF THE MORTGAGED PROPERTY BEFORE OR AFTER THE INSTITUTION OF PROCEEDINGS TO FORECLOSE THIS MORTGAGE OR TO ENFORCE ANY OF THE OTHER BOND DOCUMENTS, OR AFTER ENTRY OF JUDGMENT THEREON OR ON ANY OF THE OTHER BOND DOCUMENTS, OR AFTER A SHERIFF'S SALE OF THE MORTGAGED PROPERTY IN WHICH MORTGAGEE IS THE SUCCESSFUL BIDDER, IT BEING THE UNDERSTANDING OF THE PARTIES THAT THE AUTHORIZATION TO PURSUE SUCH PROCEEDINGS FOR OBTAINING POSSESSION IS AN ESSENTIAL PART OF THE REMEDIES FOR ENFORCEMENT OF THIS MORTGAGE AND THE OTHER BOND DOCUMENTS, AND SHALL SURVIVE ANY EXECUTION SALE TO MORTGAGEE.

BY AGREEING THAT MORTGAGEE MAY CONFESS JUDGMENT HEREUNDER MORTGAGOR, FOR ITSELF AND ANY OTHER PERSONS OR ENTITIES NOW OR HEREAFTER IN POSSESSION OF ALL OR ANY PART OF THE MORTGAGED PROPERTY, WAIVES THE RIGHT TO NOTICE IN A PRIOR JUDICIAL PROCEEDING TO DETERMINE THEIR RIGHTS AND LIABILITIES AND THE OPPORTUNITY TO RAISE ANY DEFENSE, SET OFF, COUNTERCLAIM OR OTHER CLAIM AGAINST SUCH ACTION BY MORTGAGEE.

The entering upon the Land and taking possession of the Mortgaged Property, the collection of such Rents and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done in response to such default or pursuant to such notice of default and, notwithstanding the continuance in possession, by the Mortgagee or a receiver of all or any portion of the Mortgaged Property or the collection, receipt and application of any of the Rents thereby, the Mortgagee shall be entitled to exercise every right provided for in any of the Bond Documents or by law upon occurrence of any Event of Default.

**Section 3.02.**   **Right to Cure Defaults**

Upon the occurrence of any Event of Default, Mortgagee may, but without any obligation to do so and without notice to or demand on Mortgagor and without releasing Mortgagor from any obligation hereunder or curing or being deemed to have cured any default hereunder, make or do the same in such manner and to such extent as Mortgagee may deem necessary to protect the security hereof.  Mortgagee is authorized to enter upon the Mortgaged Property for such purposes, or appear in, defend, or bring any action or proceeding to protect its interest in the

17

Mortgaged Property or to foreclose this Mortgage or collect the Obligations, and the cost and expense thereof (including actual reasonable attorneys' fees to the extent permitted by law), with interest as provided in this Section 3.02, shall constitute a portion of the Obligations and shall be due and payable to Mortgagee upon demand.   All such costs and expenses incurred by Mortgagee in remedying such Event of Default or such failed payment or act or in appearing in, defending, or bringing any such action or proceeding shall bear interest at the Default Rate, for the period after notice from Mortgagee that such cost or expense was incurred to the date of payment to Mortgagee.   All such costs and expenses incurred by Mortgagee together with interest thereon calculated at the Default Rate shall be deemed to constitute a portion of the Obligations and be secured by this Mortgage and the other Bond Documents and shall be immediately due and payable upon demand by Mortgagee therefore.

### Section 3.03.      Appointment of a Receiver

(a)      If an Event of Default occurs and is continuing, a receivership may be necessary to protect the Collateral, whether before or after maturity of the Obligations, or at the time of or after the institution of suit to collect the principal of, premium (if any), or interest on the Obligations, or to enforce this Mortgage; accordingly, Mortgagee shall, as a matter of strict right and regardless of the value of the Collateral or of the solvency of any party bound for the payment of the Obligations, have the right to the appointment on ex parte application and without notice to Mortgagor, by any court having jurisdiction, of a receiver to take charge of, manage, preserve, protect, and operate the Collateral and any business or businesses located thereon, to collect the revenues, rents, issues, profits, products, and income thereof, to make all necessary and needed repairs, to complete the construction of any improvements that have been undertaken but not completed, to pay all taxes and assessments against the Collateral and insurance premiums for insurance thereon, and after the payment of the expenses of the receivership, including reasonable attorneys' fees to Mortgagee's attorney, and after compensation for management of the Collateral, to apply the net proceeds to pay the Obligations or in such manner as the court shall direct. All such expenses shall become Obligations.

(b)      The receiver or its agents shall be entitled to enter upon the Mortgaged Property and take possession of the Collateral or any part thereof, together with any and all businesses conducted and all business assets used therewith or thereon, or any part or parts thereof, and to operate and conduct the business or businesses, or complete construction of improvements, to the same extent and in the same manner as Mortgagor might lawfully do. The receiver, personally or through its agents or attorneys, may exclude Mortgagor and its subsidiaries, agents, servants, and employees wholly from the Mortgaged Property and may have, hold, use, operate, manage, and control the same and each and every part thereof, and in the name of Mortgagor, its subsidiaries or agents, may exercise all of their rights and powers and use all of the then existing items of security and Collateral, materials, current supplies, stores, and assets and, at the expense of Mortgagor, may maintain, restore, complete construction, insure, and keep insured the properties, equipment, and apparatus provided or required for use in connection with such business or businesses, and may make all necessary and proper repairs, renewals, and replacements and all such useful alterations, additions, betterments, and improvements as the receiver may deem judicious.

18

(c)     Such receivership shall, at the option of Mortgagee, continue until full payment of the Obligations, title to and interest in the Collateral having passed by sale under the powers granted in this Mortgage, or the Event of Default having been cured.

### Section 3.04.     Application of Proceeds

Mortgagee shall pay, distribute, and apply the proceeds of any disposition of the Collateral as provided in Section 8.11 of the Bond Indenture. The disposition shall forever be a bar against Mortgagor, its legal representatives, successors and assigns, and all other Persons claiming under any of them. It is expressly agreed that the recitals in each conveyance to the purchaser shall be full evidence of the truth of the matters therein stated, and all lawful prerequisites to said disposition shall be conclusively presumed to have been performed.

### Section 3.05.     Remedies Not Exclusive

No lien, right, or remedy herein conferred upon or otherwise available to Mortgagee is intended to be or shall be construed to be exclusive of any other available lien, right, or remedy, but each and every such lien, right, or remedy shall be cumulative and shall be in addition to every other lien, right, or remedy given hereunder or now or hereafter existing at law or in equity or by statute, including, without limitation, the right of Mortgagee to take legal action to collect the Obligations without taking action with respect to the Collateral. No delay or omission to exercise any right, power, or remedy accruing upon any default or Event of Default shall impair any such right, power, or remedy or shall be construed to be a waiver of any such default or Event of Default, or an acquiescence thereto, but every such right, power, or remedy may be exercised from time to time and as often as may be deemed expedient. No waiver of any default or Event of Default hereunder shall extend to or shall affect any subsequent default or Event of Default or shall impair any rights, powers, or remedies available to Mortgagee. The giving, taking, or enforcement of any other or additional security, collateral, or guaranty for the payment of the Obligations shall not operate to prejudice, waive, or affect the security of this Mortgage or any rights, powers, or remedies hereunder, nor shall Mortgagee be required to first look to, enforce, or exhaust such other additional security, collateral, or guarantees.  Mortgagee may, at Mortgagee's election and at Mortgagee's discretion, exercise each and every right, power, and remedy hereunder concurrently or separately or in any combination.

### Section 3.06.     Right to Purchase

Upon any foreclosure or other sale of the Mortgaged Property pursuant to the terms hereof, Mortgagee may bid for and purchase the Mortgaged Property and shall be entitled to apply all or any part of the Obligations as a credit against the purchase price.

### Section 3.07.     Waivers

(a)     All rights of marshaling of assets or sale in inverse order of alienation in the event of foreclosure of any lien or security title at any time securing the Obligations or any part thereof (including, but not limited to, the lien and security title hereby created) are hereby waived.

(b)     Mortgagor agrees, to the full extent permitted by law, that in case of an Event of Default hereunder, neither Mortgagor nor anyone claiming through or under it shall set up,

19

claim, or seek to take advantage of any appraisement, valuation, stay, extension, homestead, dower, elective share, exemption, or redemption laws, statutory or otherwise, now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of this Mortgage, or the absolute sale of the Collateral, or the delivery of possession thereof immediately after such sale to the purchaser at such sale, and Mortgagor, for itself and all who may at any time claim through or under it, hereby waive to the full extent that it may lawfully do so, the benefit of all such laws.

(c)    To the extent allowed by applicable law, Mortgagor shall not at any time insist upon or plead or in any manner whatever claim or take the benefit or advantage of any stay or extension law or any law exempting the Collateral from attachment, levy, or sale on execution now or at any time hereafter in force in any locality where the Collateral or any part thereof may or shall be situated, and Mortgagor hereby expressly waives all benefit and advantage of any such law or laws and covenants that Mortgagor will not hinder, obstruct, delay, or impede the execution of any power herein granted and delegated to Mortgagee, but that Mortgagor will suffer and permit the execution of every such power as though no such law or laws had been made or enacted.

## ARTICLE IV
## ASSIGNMENT OF LEASES AND RENTS

**Section 4.01.**       **Covenants Relating to Leases and Rents; Liability of Mortgagee**

(a)    Mortgagor covenants that:

(1)    Mortgagor shall fully and faithfully perform all of its duties, covenants, and obligations as lessor, landlord, or owner of the Mortgaged Property under the Leases and observe, satisfy, and comply with all of the terms, covenants, conditions, agreements, requirements, restrictions, and provisions of the Leases, and do all acts otherwise necessary to maintain and preserve the Rents, to prevent the termination of any of the Leases, except in the event of a default by the lessee or the tenant, and to prevent any diminishment or impairment of the value of the Leases or the Rents or the interest of Mortgagor or Mortgagee therein or thereunder, it being expressly understood and agreed that Mortgagee neither undertakes nor assumes any of Mortgagor's liabilities, responsibilities, duties, or obligations in connection with the Leases or the Rents.

(2)    Mortgagor shall enforce the full and faithful performance of all of the duties and obligations of each of the tenants and lessees under the Leases, and the observance, satisfaction, and compliance with all of the terms, covenants, conditions, agreements, requirements, restrictions, and provisions of the Leases required to be observed, satisfied, or complied with by the tenants and lessees thereunder.

(3)    Mortgagor shall appear in and prosecute and defend, as shall be necessary, any action or proceeding arising under, out of, with respect to, or in connection with any of the Leases, and, upon request by Mortgagee, do so in the name of and on behalf of Mortgagee, and pay all costs and expenses, including attorneys' fees, incurred by Mortgagee in connection therewith.

20

(4)    Mortgagor shall not further assign the Leases or the Rents or terminate, cancel, alter, modify, or amend in any respect, or permit the termination, cancellation, alteration, modification, or amendment of, or accept the early surrender of, any of the Leases without the prior written consent of Mortgagee.

(5)    Mortgagor shall be the lessor or landlord under all of the Leases; provided, however, that Mortgagor may appoint a leasing agent to act on its behalf upon prior written notice to Mortgagee of the identity and mailing address of such leasing agent.

(6)    Mortgagor shall not collect Rents for more than thirty (30) days in advance.

(b)    Mortgagee shall not be liable to Mortgagor for a failure to collect any part or all of the Rents, and Mortgagee may be required to account for only such sums as Mortgagee actually collects.

### Section 4.02.    Collections

(a)    Mortgagor hereby authorizes and empowers Mortgagee, and hereby irrevocably and duly constitutes and appoints Mortgagee, as Mortgagor's attorney-in-fact, to receive any and all of the Rents, to collect any or all of the Rents, by such means and taking such action as Mortgagee shall deem necessary, and to act in all other ways with respect to the Rents and the Leases for Mortgagor and in Mortgagor's place and stead. Mortgagee shall have the right, as Mortgagor's attorney-in-fact, but not the obligation, to take any action hereby authorized in Mortgagor's name and to exercise any and all of Mortgagor's rights and remedies, whether available at law or in equity or otherwise, with respect to the Rents or the Leases.  The foregoing appointment of Mortgagee as Mortgagor's attorney-in-fact is coupled with an interest, cannot be revoked by death, incompetence, bankruptcy, insolvency, reorganization, dissolution, or otherwise and shall not terminate until the Obligations have been paid and satisfied in full.

(b)    Mortgagor hereby direct, instruct, and demand each and every Person, now or hereafter owing any of the Rents to Mortgagor to pay the Rents promptly and directly to Mortgagee upon demand therefor by Mortgagee. All payments so made shall have the same effect in satisfaction of the Rents as if made directly to Mortgagor, and Mortgagor shall not question or otherwise contest any such payment authorized hereby. By accepting Mortgagor's delivery of this Mortgage, however, Mortgagee agrees that the Rents shall be payable to and collected by Mortgagor until such time as Mortgagee may demand payment thereof directly to Mortgagee and that Mortgagee shall not demand such payment until the occurrence of an Event of Default; provided, however, that Mortgagor's privilege to continue collecting the Rents shall automatically terminate if (i) Mortgagor collects any installment of rent or any other payment (by cash, note, or otherwise) that is part of the Rents more than thirty (30) days in advance of the date such rent or other payment is due, except for advance payments required under any Lease for security deposits, brokerage commissions, or other economic reasons in the normal course of business; or (ii) any security deposit, damage deposit, or other sum under or with respect to any of the Leases may be applied to rent by the terms of such Lease and is not delivered to Mortgagee to hold upon demand by Mortgagee.

*PHI 317577221v5*

### Section 4.03.      Execution of Leases

Mortgagor shall deliver to Mortgagee originals of all Leases (together with any guaranties, letters of credit and other security related thereto, but excluding leases with residents of the Mortgaged Property). Unless Mortgagee shall otherwise consent, Mortgagor shall not enter into any Lease without complying with the following conditions: (i) each such instrument shall contain a provision that the rights of the parties thereunder are expressly subordinate to all of the rights of Mortgagee under this Mortgage; (ii) each such instrument shall contain a provision whereby the parties thereunder expressly recognize and agree that, notwithstanding such subordination, Mortgagee may sell the Mortgaged Property in the manner provided in this Mortgage and thereby, at the option of Mortgagee, sell the same subject to such instrument; and (iii) at or prior to the time of execution of any such instrument, Mortgagor shall, as a condition to such execution, procure from the other party or parties thereto an agreement in favor of Mortgagee, in form and substance satisfactory to Mortgagee, under which such party or parties agree to be bound by the provisions of this Mortgage.

### Section 4.04.      Not Additional Security

The assignment of the Rents and the Leases made in this Mortgage shall not be deemed or construed to be merely additional security or collateral for the Obligations but rather primary and unconditional security. Mortgagee may exercise all rights granted hereunder without regard to the existence, value, or adequacy of any other collateral or security for the Obligations held by Mortgagee. All collateral and security for the Obligations is primary and unconditional collateral and security. Mortgagor hereby authorizes, directs, and instructs any trustee or receiver in bankruptcy having possession of the Leases or the Rents or any of them to deliver the same to Mortgagee upon the occurrence and continuation of an Event of Default and the exercise by Mortgagee of its rights hereunder.

### ARTICLE V
### MISCELLANEOUS

### Section 5.01.      Discharge

When all of the Obligations shall have been paid or deemed to have been paid pursuant to the provisions of the Bond Indenture, and provision shall also be made for paying all other sums payable under the Bond Indenture and the Obligations, then this Mortgage and the lien created hereby shall be canceled and surrendered, and Mortgagor shall be released from the covenants, agreements, and obligations of Mortgagor contained in this Mortgage, and Mortgagee, at the request and the expense of Mortgagor, shall execute such documents as may be reasonably requested by Mortgagor to evidence the cancellation and satisfaction of this Mortgage and the release of Mortgagor from its obligations hereunder.  Otherwise, this Mortgage shall remain and continue in full force and effect.

### Section 5.02.      No Waiver

The exercise of the privileges granted to Mortgagee in this Mortgage to perform Mortgagor's obligations under this Mortgage shall in no event be considered or constitute a waiver of the right of Mortgagee at any time after an Event of Default hereunder to declare the

Obligations to be at once due and payable, but is cumulative of such right and of all other rights given by this instrument, all mortgages, security instruments, guarantees, and other instruments now or hereafter executed by (or accepted by Mortgagor as binding upon) Mortgagor, and of all rights given Mortgagee by law.

### Section 5.03.        Extension, Rearrangement, or Renewal of Obligations

It is expressly agreed that any of the Obligations at any time secured hereby may be from time to time extended for any period, rearranged, or renewed without in anywise altering, varying, or diminishing the force, effect, lien, or interest of this Mortgage until all sums with interest and charges hereby secured are fully paid; and no other security now existing or hereafter taken to secure the payment of the Obligations or any part thereof or the performance of any obligation or liability whatever shall in any manner impair or affect the security given by this Mortgage; and all security for the payment of the Obligations or any part thereof and the performance of any obligation or liability shall be taken, considered, and held as cumulative.

### Section 5.04.        Tenants at Will

Subject to Permitted Encumbrances, Mortgagor agrees for itself and any and all Persons claiming by, through, or under Mortgagor, that if Mortgagor shall hold possession of the Mortgaged Property or any part thereof subsequent to the sale hereunder, Mortgagor and any other Persons so holding possession, shall become and be considered as tenants at will of the purchaser or purchasers at such sale; and Mortgagor and any such tenant failing or refusing to surrender possession upon demand shall be guilty of forcible detainer and shall be liable to such purchaser or purchasers for reasonable rental on the Mortgaged Property, and shall be subject to eviction and removal, forcible or otherwise, with or without process of law, all damages that may be sustained by any such tenant as a result thereof being hereby expressly waived.

### Section 5.05.        Notice

Except where other notice is required by applicable law, all notices, requests, demands, directions, and other communications hereunder shall be in writing and shall be deemed to be sufficiently given or made when delivered personally to any party who is to receive the same or when sent by the method described in Section 9.3 of the Loan Agreement, addressed as provided in Section 5.09 of this Mortgage.

### Section 5.06.        Severability

In the event any item, term, or provision contained in this Mortgage is in conflict, or may hereafter be held by a court of competent jurisdiction to be in conflict, with the laws of the State or of the United States of America, this Mortgage shall be affected only as to such particular item, term, or provision, and shall in all other respects remain in full force and effect.  In the event that any part of the Obligations cannot lawfully be secured hereby, or in the event that the lien, security interest, or security title hereof cannot be lawfully enforced to pay any part of the Obligations, or in the event that the lien, security interest, or security title created by this Mortgage shall be invalid or unenforceable as to any part of the Obligations, then, and in any such event, all payments on the Obligations shall be deemed to have been first applied to the complete payment and liquidation of that part of the Obligations that is not secured by this

23

Mortgage, and the unsecured portion of the Obligations shall be completely paid and liquidated prior to the payment and liquidation of the remaining and secured portion of the Obligations.

### Section 5.07.     Governing Law

This Mortgage shall be governed, in all respects including validity, interpretation, and effect by, and shall be enforceable in accordance with, the laws of the State and of the United States of America.

### Section 5.08.     Amendments

This Mortgage may be amended from time to time, without the consent of or notice to any of the Holders of the Obligations, (i) to describe additional Obligations to be secured hereby and to increase the amount of the present obligations secured hereby, and (ii) if, in the opinion of Mortgagee, who may rely upon an Opinion of Counsel (as defined in the Bond Indenture), such amendment shall be consistent with the terms of the Bond Indenture and hereof and shall not materially and adversely affect the Holders.  The Holders of not less than a majority in aggregate principal amount of Obligations then Outstanding (as defined in the Bond Indenture) shall have the right, from time to time, to consent to and approve the execution of any other amendment to this Mortgage in the manner provided in Section 11.05 of the Bond Indenture.

### Section 5.09.     Addresses

The addresses of Mortgagor and Mortgagee are set forth in the first paragraph of this Mortgage.  The addresses set forth above may be changed as provided in Section 9.3 of the Loan Agreement.

### Section 5.10.     Time is of the Essence

Time is and shall be the essence of this Mortgage.

### Section 5.11.     Damage, Destruction, and Condemnation

All moneys and awards payable either as damages or compensation for any damage or destruction to or for the taking of title or possession of the Mortgaged Property by reason of any condemnation or eminent domain proceedings shall be paid and applied as provided in the Bond Indenture.

### Section 5.12.     Future Advances

This is an Open-End Mortgage and shall be entitled to all benefits as such under 42 Pa.C.S.A. § 8143 (the "Open-End Mortgage Statute").  This Mortgage secures a loan, advances of the proceeds of which are made from time to time by Mortgagee to Mortgagor.   This Mortgage secures future advances made pursuant to this Mortgage or pursuant to the Loan Agreement.   Without limiting the foregoing, this Mortgage secures all advances made by Mortgagee of any kind or nature described in 42 Pa. C.S.A. § 8144; provided, however, Mortgagee has not obligated itself to make such future advances to Mortgagor or any other party or to lend all or any part of the maximum amount of advances described on page 1 of this

24

Mortgage. This Mortgage also secures, in addition, attorneys' fees, late charges and other items as provided for herein.

### Section 5.13.    Notices by Mortgagor

If Mortgagor sends a written notice to Mortgagee which purports to limit the indebtedness secured by this Mortgage and to release the obligation of Mortgagee to make any additional advances to or for the benefit of Mortgagor, such a notice shall be ineffective as to any future advances made: (i) to enable completion of the improvements on the Land for which the loan secured hereby was originally made; (ii) to pay taxes, assessments, maintenance charges and insurance premiums; (iii) for costs incurred for the protection of the Mortgaged Property or the lien of this Mortgage; (iv) on account of expenses incurred by Mortgagee by reason of a default of Mortgagor hereunder or under the Loan Agreement; and (v) on account of any other costs incurred by Mortgagee to protect and preserve the Mortgaged Property or the lien of this Mortgage. It is the intention of the parties hereto that any such advance made by Mortgagee after any such notice by Mortgagor shall be secured by the lien of this Mortgage on the Mortgaged Property.

### Section 5.14.    Notices by Subordinate Lien Holders

If Mortgagee receives written notice pursuant to Section 8143(b) of the Open-End Mortgage Statute from a holder of a lien or encumbrance on the Mortgaged Property which is subordinate to the lien of the Mortgage, then and notwithstanding any provision to the contrary contained in any of the Bond Documents, Mortgagor agrees that Mortgagee shall not be responsible to make any further advances to Mortgagor (and the Mortgagee is released from all liability for failure to make such advances) if Mortgagee determines in its sole discretion that any such advance requested by Mortgagor could be construed to be an unobligated advance under Section 8143(b) of the Open-End Mortgage Statute.

### Section 5.15.    Security Agreement

This Mortgage constitutes and shall be deemed to be a "security agreement" for all purposes of the Uniform Commercial Code; and the Mortgagee shall be entitled to all the rights and remedies of a "secured party" under the Uniform Commercial Code as to any Personal Property. Information concerning the security interest in Personal Property can be obtained from the Mortgagee at its address set forth in the opening paragraph to this Mortgage. The mailing address of the Mortgagor (debtor) is also set forth in the opening paragraph to this Mortgage.

### Section 5.16.    Fixture Filing

Some of the Personal Property is or is to become fixtures on the Mortgaged Property and this instrument is to be recorded in the real estate records. This Mortgage is effective as a financing statement filed as a fixture filing, executed by the Mortgagor, as debtor, in favor of the Mortgagee, as secured party, with respect to all fixtures included in the Mortgaged Property and the Personal Property. Products of the collateral are also covered. Information concerning the security interest in fixtures can be obtained from the Mortgagee at its address set forth in the opening paragraph of this Mortgage. The mailing address of the Mortgagor (debtor) is also set

25

forth in the opening paragraph of this Mortgage.  The Mortgagor's organizational identification number is 6338726.

### Section 5.17.        Financing Statements

The Mortgagor hereby authorizes the Mortgagee to file any financing statements, as well as extensions, renewals and amendments thereof, and any reproductions of this Mortgage in such form as the Mortgagee may require to perfect a security interest with respect to such items.  The Mortgagor shall pay all costs of filing such financing statements and any extensions, renewals, amendments and releases thereof, and shall pay all reasonable costs and expenses of any record searches for financing statements as the Mortgagee or the Mortgagee may require.  The filing of such financing statements shall under no circumstance be construed as impairing either the Mortgagee's remedies or the priority of the lien granted hereby, and the Mortgagor agrees that all items of Personal Property are, and at all times, for all purposes and in all proceedings (both legal and equitable) shall be, at the election of the Mortgagee, regarded as part of the real estate encumbered by this Mortgage.

### Section 5.18.        Inconsistencies

In the event of any inconsistency between this Mortgage and the Loan Agreement, the terms hereof shall be controlling as necessary to create, preserve and/or maintain a valid mortgage lien and security interest upon the Mortgaged Property, otherwise the provisions of the Loan Agreement shall be controlling

[Remainder of page intentionally left blank]

PHI 317577221v5

**IN WITNESS WHEREOF**, Mortgagor has executed this Mortgage by causing its name to be hereunto subscribed by its Sole Member as of the day and year first above written.

> **PAVILION APARTMENTS PENN LLC, a**
> **Pennsylvania limited liability company**
> By:     JPC Charities, an Ohio nonprofit
>          corporation, its Sole Member
>
>
> By:     _____
> Name: Jason Cook
> Title:   President

The Address of the Mortgagee is:

15950 North Dallas Parkway, Suite 550
Dallas, Texas 75248

_____
On behalf of Mortgagee

STATE OF OHIO       )
             ) SS:
COUNTY OF FRANKLIN    )

On this 20 day of June, 2016, before me, the subscriber, a Notary Public in and for the State and County aforesaid, personally appeared Jason Cook, President of JPC Charities, an Ohio nonprofit corporation, the sole member of Pavilion Apartments Penn LLC, a Pennsylvania limited liability company, and that he, as such officer, executed the foregoing instrument for the purpose therein contained by duly signing such instrument.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Meredith L. Rosenbeck, Attorney At Law
NOTARY PUBLIC - STATE OF OHIO
My commission has no expiration date
Sec. 147.03 R.C.

Notary Public

(NOTARIAL SEAL)

My commission does not expire.

## EXHIBIT A

## DESCRIPTION OF LAND

<u>Exhibit A</u>

Legal Description

ALL THAT CERTAIN lot or piece of ground. Situate in the 52nd Ward of the City of Phila. described as follows, to wit:

BEGINNING at an interior point in the bed of a pond and a right of way for drainage which interior point is measured North 17 degrees, 58 minutes, 59.44 seconds, East the distance of 100.50 feet (U.S.S.) from an angle point which angle point is measured North 17 degrees, 44 minutes, 37 seconds East the distance of 77.05 feet (U.S.S.) from a point which point is measured North 64 degrees, 52 minutes, 29 seconds West the distance of 332.01 feet (U.S.S.) from a point on a stone which point is measured North 09 degrees, 53 minutes, 31 seconds East 297.30 feet (U.S.S.) from a point on the Northwesterly side of Conshohocken Avenue (80 feet wide) which point is measured North 79 degrees, 52 minutes, 12.9 seconds East along the said Northwesterly side of Conshohocken Avenue the distance of 1095.734 feet (U.S.S.) from a point of tangent which point of tangent is measured Southeastwardly on the arc of a circle curving to the left connecting the said Northwesterly side of Conshohocken Avenue and the Northeasterly side of 40th Street (70 feet wide);

THENCE extending North 17 degrees, 58 minutes, 59.44 seconds East passing partly through a right of way for drainage purposes partly crossing a pond and passing partly through a stream and crossing a stream the distance of 523.37 feet (U.S.S.) to a point;

THENCE South 72 degrees, 01 minute, 01 second East partly crossing said right of way for drainage purposes and
crossing a stream 189.99 feet (U.S.S.) to an angle point;

THENCE South 40 degrees, 23 minutes, 45 seconds East 69.72 feet (U.S.S.) to a point;

THENCE Southwestwardly on the arc of a circle curving to the left having a radius of 380 feet the arc distance of 217.77 feet (U.S.S.) to a point of tangent;

THENCE South 16 degrees, 46 minutes, 10 seconds West 263.50 feet (U.S.S.) to a point;

THENCE North 76 degrees, 39 minutes 01 second West partly recrossing said right of way for drainage and partly recrossing said pond 199.26 feet (U.S.S.) to a point in the beds thereof being the first mentioned point and Place of Beginning.

***For Company Reference Only, Not An Insuring Provision:***

**Address:**   3901 Conshohocken Avenue Philadelphia, PA 19131

**Parcel ID / Tax ID Number:**  88-11610-00

**EXHIBIT B**

**PERMITTED ENCUMBRANCES**

"Permitted Encumbrances" means as of any particular time,

(i)     the right reserved to or vested in any municipality or public authority by the terms of any provision of law to terminate any right, power, franchise, grant, license or permit;

(ii)    subject to the provisions of the Loan Agreement and this Mortgage, the right reserved to or vested in any municipality or public authority to purchase, condemn or appropriate all or any part of the Project;

(iii)   liens for the taxes, assessments, levies, fees, charges, duties, imposts, claims and demands referred to in this Mortgage which are not at the time delinquent, or the validity or amount of which is being contested in compliance with the provisions of this Mortgage;

(iv)    easements, rights of way, licenses and other encumbrances of record;

(v)     rights reserved to or vested in any municipality or public authority to control or regulate the Project or to use the Project in any manner;

(vi)    liens which are subordinate and junior to the lien of this Mortgage and which have been approved in advance in writing by Mortgagee to the extent required herein;

(vii)   purchase money security interests in the ordinary course of business;

(viii)  the Land Use Restriction Agreement (as defined in the Bond Indenture);

(ix)    matters that would be disclosed by an accurate survey or physical inspection of the Project;

(x)     the Lease Agreement;

(xi)    the lien and security interest of this Mortgage;

(xii)   Pennsylvania Housing Finance Agency Indenture of Restrictive Covenants for Low-Income Housing Tax Credits dated December 4, 2002 by and between the Borrower (as assignee of Pavilion Preservation, L.P.) and Pennsylvania Housing Finance Agency recorded December 20, 2002; and

(xiii)  the Amended and Restated Regulatory Agreement by and among the Redevelopment Authority of the City of Philadelphia, and Commerce Bank/Pennsylvania, National Association, as Trustee, and the Borrower (as assignee of Pavilion Preservation, L.P., a Delaware limited partnership).

*PHI 317577221v5*