IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE OF THE $29,615,000 PHILADELPHIA AUTHORITY FOR INDUSTRIAL DEVELOPMENT SENIOR HOUSING REVENUE BONDS (THE PAVILION), <br><br> *Plaintiff,* <br><br> v. <br><br> PAVILION APARTMENTS PENN LLC and KIRYAT GREENBRIAR, L.P.*,* <br><br> *Defendants.* <br><br> KIRYAT GREENBRIAR, L.P., <br><br> *Cross-Plaintiff,* <br><br> v. <br><br> PAVILION APARTMENTS PENN LLC, <br><br> *Cross-Defendant.* | CIVIL ACTION <br> NO. 22-3985 |

**PAPPERT, J.**                                                                                      **April 17, 2023**

**<u>MEMORANDUM</u>**

Wilmington Trust, N.A., as Trustee of the $29,615,000 Philadelphia Authority for Industrial Development Senior Housing Revenue Bonds, moved for leave to file a second amended complaint adding claims for statutory avoidance of transfers and veil piercing and naming Aloft Mgt., LLC; PF Holdings, LLC; and Aron Puretz as defendants. The Proposed Second Amended Complaint does not allege sufficient facts to show that the new defendants have either an ownership interest in Pavilion or that

1

they are under substantially common ownership with Pavilion, so the veil piercing claims are futile. Leave to amend is granted as to all other claims.

I

The Court explained the relationship between Wilmington Trust and Pavilion in its January 13, 2023, Receivership Opinion:

> Wilmington Trust is the trustee under a July 1, 2016, Trust Indenture between the Philadelphia Authority for Industrial Development ("PAID") and Wilmington Trust. (Ex. P-101). PAID issued two series of Senior Housing Revenue Bonds, in a principal amount totaling $29,615,000, which PAID loaned to Pavilion for use in acquiring a leasehold interest in, renovating, and operating a low-income senior housing project (the "Project"). (Hrg. Tr. 29–32, ECF 43.) The Project, known as the Pavilion Apartments, is a 295-unit apartment building in Philadelphia. (Id. at 30:11–14.) It is situated on land owned by Kiryat Greenbriar, and Pavilion has a long-term leasehold interest in the land under a ground lease with Greenbriar. (Id. at 102:22–103:1.)
>
> . . . . To evidence the loan, PAID and Pavilion signed a loan agreement, (Ex. P-102), and Pavilion executed a Multifamily Promissory Note, (Ex. P-103), in favor of PAID, which PAID then assigned to Wilmington Trust. The Note is secured by a Leasehold Mortgage on Pavilion's interest in the leasehold estate and the Project, in favor of Wilmington Trust. (Hrg. Tr. 37; Ex. P-104 at 2.) The bonds are paid from the project revenues, which Pavilion must remit to Wilmington Trust each month. (Hrg. Tr. 29:17–30:6.) . . . [A]ll the loan documents are cross-defaulting—a default under one is a default under the others. (Id. at 44.) Additionally, a default under the ground lease is also a default under the leasehold mortgage and loan agreement. (Id. at 43–44.)

(ECF 49, at 1–2.)[1] Wilmington Trust filed this lawsuit against Pavilion to foreclose on the Leasehold Mortgage, alleging defaults under the loan documents. (ECF 1.) In a separately filed action, it brought breach of contract and accounting claims against Pavilion and Greenbriar, and claims for breach of the covenant of good faith and fair dealing and declaratory judgment against Greenbriar. (No. 22-3987, ECF 1.) The

---

[1] All docket citations are to Case No. 22-3985, unless otherwise specified.

actions were later consolidated by agreement of the parties. (Am. Compl., No. 22-3985, ECF 25.) The Court appointed a receiver to manage the mortgaged property in January of 2023. (ECF 45, 49.)

Wilmington Trust now moves to amend its Amended Complaint to allege additional breaches of the loan terms by Pavilion;[2] to add claims under the Pennsylvania Uniform Voidable Transactions Act against Aloft, PF Holdings, and Aron Puretz; and to pierce the corporate veil to hold Aloft, PF Holdings, Aron Puretz and other entities liable for any judgment entered against Pavilion. (ECF 71.)

II

A party may amend its pleading once as a matter of course, and subsequently "only with the opposing party's written consent or the court's leave." Fed. R. Civ. Proc. 15(a). A court should "freely give leave [to amend] when justice so requires," Fed. R. Civ. Proc. 15(a)(2), but may deny leave "if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003).

There is no suggestion that Wilmington Trust engaged in dilatory conduct. Nor would amendment prejudice Pavilion: The Trustee alerted the Court and the defendants to its intention to seek leave to amend at the Rule 16 conference, and it appears that the type of information Pavilion would have to produce relating to the new claims is not substantially broader than Pavilion's existing obligation to produce

---

[2] Pavilion does not appear to oppose the amendment to the breach of contract claim, except insofar as it argues that such claims cannot be combined with a mortgage foreclosure action, as discussed in Part III, *infra*.

3

materials to the Receiver. *See DLJ Mortg. Capital, Inc. v. Sheridan*, 975 F.3d 358, 369–70 (3d Cir. 2020).

In assessing futility, the Court applies the same standard as it would under a motion to dismiss for failure to state a claim under Rule 12(b)(6). *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). First, the Court "must accept all of the [proposed amended] complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Then, it "must determine whether the facts alleged in the [proposed amended] complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The Court must "construe the [proposed amended] complaint in the light most favorable to the plaintiff . . . ." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008).

III

Pavilion objects to the Proposed SAC on the grounds that under the Pennsylvania Rules of Civil Procedure, "[a]n action in mortgage foreclosure is strictly an *in rem* action and cannot include an *in personam* action to enforce personal liability." *Insilco Corp. v. Rayburn*, 543 A.2d 120, 123 (Pa. Super. Ct. 1988); Pa. R. Civ. Proc. 1141(a).[3] This limitation, however, is waived if the mortgagor (in this case, Pavilion) fails to object to the inclusion of an *in personam* action in the mortgage foreclosure proceeding. *Id.* Wilmington Trust's original Complaint (No. 22-3985, ECF 1) included

---

[3] Aloft purports to object as well, but although Wilmington Trust seeks to add Aloft as a defendant, Aloft is not a party at this point and lacks standing to oppose the Motion. *See Custom Pak Brokerage, LLC v. Dandrea Produce, Inc.*, No. 13-5592, 2014 WL 988829, at *2 (D.N.J. Feb. 27, 2014) (citing *State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 246 F.R.D. 143, 146 n.1 (E.D.N.Y. 2007)).

4

only a claim for mortgage foreclosure; the contract-related claims were filed in a separate action (No. 22-3987, ECF 1), in compliance with Pennsylvania Rule 1141. During a telephone conference with the Court on December 1, 2022, counsel for Wilmington Trust, Kiryat Greenbriar, and Pavilion all agreed, for reasons of efficiency and economy, that Wilmington Trust would voluntarily dismiss Case No. 22-3987 and amend its complaint in Case No. 22-3985 to include both the mortgage foreclosure and contract-related claims. (No. 22-3985, ECF 23–25; No. 22-3987, ECF 23–25.) Pavilion did not object to this course of action during the telephone conference or in its Answer to Wilmington Trust's Amended Complaint. (No. 22-3985, ECF 28.) Pavilion waived its objection to combining the actions, and it would be inequitable to do otherwise now. Even if Pavilion had not consented to combining the actions, the Court would exercise its discretion under Federal Rule of Civil Procedure 42(a) to consolidate them. *See Delaware Tr. Co. v. Lal*, No. 96-5783, 1997 WL 230805, at *3 (E.D. Pa. Apr. 30, 1997).

IV

Pennsylvania's Uniform Voidable Transfers Act (PUVTA) provides that a transfer by a debtor is voidable as to a creditor[4] if the debtor made the transfer

> (1) with actual intent to hinder, delay or defraud any creditor of the debtor; or

---

[4] A creditor under the PUVTA is "[a] person that has a claim" and a debtor is "[a] person that is liable on a claim." 12 Pa.C.S. § 5101(b). The statute, in turn, defines "person" as "an individual, partnership, estate, business or nonprofit entity, public corporation, government or governmental subdivision, agency, trust or instrumentality or other legal entity," and "claim" as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." *Id*. Wilmington Trust has adequately alleged that it has a right to payment from Pavilion on the $29,615,000 loan. Proposed SAC ¶¶ 12–15. Pavilion's argument that this claim belongs to the Receiver, standing in Pavilion's shoes, ignores the language of the statute making the transfers voidable "as to a creditor." 12 Pa.C.S. § 5104(a). Its argument that the PUVTA does not cover secured creditors is contrary to the Act's definition of "claim." 12 Pa.C.S. § 5101(b).

> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
>> (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>
>> (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

12 Pa.C.S. § 1504(a).

Wilmington Trust alleges that Pavilion made improper transfers to over a dozen "affiliate[d]" entities since 2021, mostly in the form of bank transfers designated on Pavilion's financial statements as "loans" but unsupported by any loan documentation or agreements. However, only Aloft, PF Holdings and Aron Puretz are named in the proposed PUVTA claim (proposed Count Eight). (Proposed SAC ¶¶ 156–68, ECF 71-2.) The bulk of the transfers allegedly made by Pavilion since 2021 have already been recovered and therefore cannot support a PUVTA claim, because no further relief is available. 12 Pa.C.S. § 5107(a). But the Proposed SAC identifies three categories of unrecovered transfers: unspecified amounts paid to Aloft as management fees; $55,000 transferred to PF Holdings; and an undetermined amount of cash taken from the laundry vending machines by Aron Puretz. (Proposed SAC ¶ 160.) Additionally, it alleges on information and belief that Pavilion made transfers to its "affiliates" prior to 2021, which have not been recovered. (*Id.* ¶ 86.)

### A

A plaintiff who lacks direct evidence of actual intent to hinder, delay or defraud may prove a § 5104(a)(1) claim by circumstantial evidence. *Chestnut St. Consol., LLC*

*v. Dawara*, No. 21-3046, 2022 WL 3051830, at *10 (E.D. Pa. Aug. 3, 2022). The PUVTA lists eleven factors, or "badges of fraud," which may indicate such intent:

> (1) the transfer . . . was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) [whether] the transfer . . . was disclosed or concealed; (4) before the transfer was made . . . , the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred . . . ; (9) the debtor was insolvent or became insolvent shortly after the transfer was made . . . ; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

12 Pa.C.S. § 5104(b). "No particular badge is necessary, nor is any combination sufficient; finding intent is always fact specific." *Eddystone Rail Co., LLC v. Bridger Logistics, LLC*, No. 17-495, 2022 WL 1768853, at *3 (E.D. Pa. Mar. 21, 2022). "Although the presence of a single badge of fraud may cast suspicion on a transferor's intent, the confluence of several in one transaction generally provides conclusive evidence of an actual intent to defraud." *Chestnut St. Consol.*, 2022 WL 3051830, at *10 (quoting *In re Roman Cath. Diocese of Harrisburg*, 640 B.R. 59, 74 (Bankr. M.D. Pa. 2022) (cleaned up)).

With respect to the bank transfers, Wilmington Trust alleges that the transferees were all insiders, (Proposed SAC ¶¶ 80, 81, 97, 100, 109), *see also* 12 Pa.C.S. § 5101 cmt.8; that Pavilion retained control over the funds, as evidenced by its ability to immediately recall over $800,000 in transferred funds, (*id.* ¶ 85); that Pavilion concealed the nature of the transfers by characterizing them as "loans in its general ledger and financial statements, (*id.* ¶ 82); and that Pavilion did not receive reasonably equivalent value in exchange for the transfers. (*Id.* ¶¶ 83, 111). Pavilion also allegedly

7

did not pay its loan payments, ground rent and utilities as they came due during the period when the transfers were made, (*id.* ¶¶ 31, 64), which triggers a presumption of insolvency under 12 Pa.C.S. § 5102(a). Wilmington Trust further alleges that the management fees paid to Aloft and the laundry vending machine cash collected by Aron Puretz were transfers to insiders and that Pavilion was insolvent when the transfers were made. (*Id.* ¶¶ 93, 96–99, 105–15.) With respect to the laundry vending proceeds Aron Puretz allegedly collected, Wilmington Trust alleges that Puretz did not have an interest in the laundry machines, so Pavilion made the transfer without receiving consideration of reasonably equivalent value. (*Id.* ¶ 111.) These allegations are sufficient to plead a claim under § 5104(a)(1).

B

A transfer is also voidable under § 5104(a)(2) if the debtor does not receive reasonably equivalent value in exchange and either the debtor's remaining assets are unreasonably small in relation to the needs of its business, 12 Pa.C.S. § 5104(a)(2)(i) & cmt.5, or the debtor intended to, believed or should have believed it would be unable to pay its debts as they became due, 12 Pa.C.S. § 5104(a)(2)(ii). Subsection (ii) applies when the debtor will be insolvent in the equity sense, and subsection (i) targets debtors who will be "technically solvent but doomed to fail." *In re Island View Crossing II, L.P.*, Nos. 17-09292, 18-02800, 2021 WL 3745433, at *5 (Bankr. E.D. Pa. Aug. 24, 2021).

Wilmington Trust alleges both that Pavilion was insolvent at the time the transfers were made, (*id.* ¶¶ 89, 113), and that the assets it retained were insufficient to maintain the apartment building in a condition that met the minimum standards for

habitability—and, by extension, to carry on its business of renting out apartments. (*Id.* ¶ 91.)

Pavilion's bank transfers to related entities, including Aloft and PF Holdings, were allegedly not made in exchange for reasonably equivalent value: although they were listed as "loans" on the financial statements and ledgers, there was no documentation or agreement evidencing an obligation to repay or any consideration for the loan. (Proposed SAC ¶¶ 81–82.) Wilmington Trust also alleges Aron Puretz collected proceeds from the laundry vending machine as if he owned the laundry machines, even though he had no interest in the equipment. (*Id.* ¶¶ 106–07.) This is sufficient to state a claim under § 5104(a)(2) with respect to those transfers. But Wilmington Trust fails to allege that Pavilion did not receive reasonably equivalent value in exchange for the management fees it paid to Aloft—although the payments were allegedly barred by the terms of the Loan Agreement because of Pavilion's financial condition, (*id.* ¶ 93), there is no allegation that the fees were not commensurate with the value of the property management services Aloft rendered.

## VI

In proposed Count Nine, Wilmington Trust asks the Court to pierce the corporate veil and hold Aloft, PF Holdings, Aron Puretz and (potentially) other entities liable for any judgment entered against Pavilion. (*Id.* ¶¶ 169–76.) It relies on both the alter ego theory and Pennsylvania's newly recognized enterprise liability theory of veil piercing. The Court "start[s] from the general rule that the corporate entity should be recognized and upheld" and is mindful of the "strong presumption in Pennsylvania

9

against piercing the corporate veil." *Lumax Indus., Inc. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995).

A

The alter ego theory allows a court to disregard the corporate form and assess a corporation's liability against an individual owner or parent company. In determining whether a corporation is the alter ego of its owner, federal courts in this Circuit consider the following factors: "gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of [the] subsidiary corporation, siphoning of funds from the subsidiary corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a façade for the operations of the dominant stockholder." *Trinity Indus., Inc. v. Greenlease Holding Co.*, 903 F.3d 333, 365 (3d Cir. 2018) (quoting *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484–85 (3d Cir. 2001)) (cleaned up). Similarly, Pennsylvania state courts look for "undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and use of the corporate form to perpetrate a fraud." *Lumax*, 669 A.2d at 895. "No single factor is dispositive," *Trinity Indus.*, 903 F.3d at 365, and the ultimate inquiry is whether "the corporation was nothing more than a sham used to disguise the shareholders' use of its assets for their own benefit in fraud of its creditors." *Clientron Corp. v. Devon IT, Inc.*, 894 F.3d 568, 576 (3d Cir. 2018) (quotation omitted) (cleaned up). Although the alter ego theory is equally applicable to limited liability companies as to corporations, the factors must be applied with sensitivity to the LLC's relative informality and flexibility. *See In re LMcD, LLC*, 405 B.R. 555, 561 (Bankr. M.D. Pa.

2009); *see also* Mark C. Larson, *Piercing the Veil of Pennsylvania Limited Liability Companies*, 75 Pa. B.A. Q. 124 (2004).

Wilmington Trust claims that Aloft, PF Holdings, Aron Puretz and other related entities are Pavilion's alter egos. But the "alter ego theory applies only where the individual or corporate owner controls the corporation to be pierced *and the controlling owner is to be held liable*." *Mortimer v. McCool*, 255 A.3d 261, 270 (Pa. 2021). Put simply, only individuals or entities with an ownership interest in a corporation can be its alter ego. *Id.* The Proposed SAC alleges, and the Court must accept as true for purposes of this analysis, that Pavilion's sole member is JPC Charities, an Ohio nonprofit corporation. (Proposed SAC ¶ 2.) Wilmington Trust has not pleaded sufficient facts to show that Aloft, PF Holdings, Aron Puretz or any entity other than JPC has an ownership interest in Pavilion, so they cannot be liable under the alter ego theory.

B

The Pennsylvania Supreme Court recently recognized the enterprise liability theory of veil piercing in *Mortimer v. McCool*, 255 A.3d 261 (Pa. 2021). This theory permits a court to "hold one company liable for an affiliated company's debt." *Id.* at 270. It employs a "triangular" piercing mechanism, "run[ning] up from the debtor corporation to the common owner, and from there down to the targeted sister corporation(s)." *Id.* at 285. *Mortimer* set out two basic requirements for enterprise liability: (1) "at *least* substantially common ownership" and (2) "some fraud, wrong or injustice" that would result from "adherence to the corporate fiction." *Id.* at 287 (quotation omitted).

Wilmington Trust has not pleaded sufficient facts to satisfy the common ownership prong.[5] As discussed above, JPC Charities is Pavilion's sole member. (Proposed SAC ¶ 2.) JPC is not alleged to own any of the other entities listed in the Proposed SAC, so enterprise liability cannot run down to those entities from JPC. Wilmington Trust asserts in its Memorandum in Support of the Motion to Amend that Chaim Puretz, Aron Puretz's brother, is a "consultant" with JPC Charities, registered agent for and member of Aloft, and a "partner" in PF Holdings.[6] (ECF 71-1, at 10.) But these allegations do not appear in the Proposed SAC. Even if they did, they would fall short of pleading that Chaim Puretz has an *ownership* interest in Pavilion. Enterprise liability therefore cannot run from Pavilion through him.

The Proposed SAC fails to state a claim for veil piercing against Aloft, PF Holdings, Aron Puretz or any other entity under either the alter ego theory or the enterprise liability theory.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[5] Aron Puretz is an individual and therefore cannot be liable under the enterprise liability theory.

[6] In its Memorandum, the Trustee also asserts that Chaim Puretz is a "member of Pavilion." (ECF 71-1, at 9.) The Court cannot credit this statement because it is contrary to the allegation in the Proposed SAC that Pavilion's sole member is JPC Charities. (Proposed SAC ¶ 2.)

12