# Exhibit F

## SECOND AMENDMENT OF LEASE

THIS SECOND AMENDMENT OF LEASE ("Second Amendment") dated as of the 1st day of December 2002, and executed _December 18, 2002_, is made by and between KIRYAT GREENBRIAR, a Pennsylvania limited partnership ("Landlord"), and PAVILION ASSOCIATES, a Pennsylvania limited partnership ("Tenant").

### Background

Landlord is the owner of certain real property consisting of 2.4067 acres located on Conshohocken Avenue in the City of Philadelphia, County of Philadelphia, Commonwealth of Pennsylvania more particularly described on Exhibit "A" hereto, together with all easements, alleys, rights of ingress and egress now or hereafter belonging to or appertaining to such real property and all other appurtenances (collectively, the "Premises"). On November 29, 1973, West Village, a Pennsylvania limited partnership, Landlord's predecessor in interest, and WV III, a Pennsylvania limited partnership, Tenant's predecessor in interest, entered into a Lease Agreement, which was recorded in Deed Book D.C.C. 515, page 466 of the Records Department of the City of Philadelphia, whereby West Village, as landlord, leased the Premises to WV III, as tenant, for a term of seventy-five years. On September 28, 1983, West Village and WV III entered into an Amendment of Lease for the Premises, which was recorded in Deed Book EFP 850, page 154. Landlord and Tenant, after acquiring their respective interests in the Premises, subsequently entered into a Stipulation, dated June 8, 1989, to resolve certain litigation concerning real estate taxes for the Premises and their relationship as landlord and tenant. The November 29, 1973 Lease Agreement (the "Initial Lease"), the September 28, 1983 Amendment of Lease, and the June 8, 1989 Stipulation are referred to collectively as the "Lease". Landlord and Tenant now desire to amend the Lease. Capitalized terms used herein and not otherwise defined shall have the definitions set forth in the Lease.

NOW THEREFORE, for and in consideration of the covenants and agreements contained in this Second Amendment and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, Landlord and Tenant amend the Lease as follows:

1. Second Amendment Controls. The covenants, terms and conditions in this Second Amendment supplement and modify the Lease. In the event of any inconsistency or conflict between the covenants, terms and conditions in this Second Amendment and the Lease, this Second Amendment shall control and prevail.

2. Definitions. For the purposes of this Second Amendment and the Lease, each of the following terms shall have the meaning specified in this Section 2 with respect thereto:

    (a) Foreclosure shall mean an execution sale, including a sheriff's sale, marshall's sale, trustee's sale pursuant to a deed of trust, or other similar realization proceedings relating to a Leasehold Mortgage (as hereinafter defined) and/or note secured thereby, including a transfer or assignment in lieu of Foreclosure.

    (b) Institutional Lender shall mean a local, state or federal agency or other governmental or quasi-governmental authority or body, or a commercial bank, trust company, mutual savings bank, savings and loan association, life insurance company, pension trust fund, mortgage or real estate

PHL_A#1897032v4

50582091
Pg: 2 of 19
12/20/2002 12:06PM

investment trust having a minimum paid-up capital of one million dollars ($1,000,000.00) or other financial institution commonly known as an institutional lender, including a lender referred to as "conduit lender", which pools mortgages for the purpose of issuing mortgage-backed securities.

(c) Insurance Trustee shall mean the Leasehold Mortgagee holding the Leasehold Mortgage constituting a first lien on the leasehold estate created by the Lease and this Second Amendment, or, at the discretion of Tenant and any such first Leasehold Mortgagee, any other Institutional Lender approved by Landlord in its reasonable discretion as the depositary of insurance proceeds under the Lease and this Second Amendment.

(d) Leasehold Mortgage or Leasehold Mortgages shall mean any one or more mortgages, deeds of trust, deeds to secure debt, loan deeds, trust indentures, security agreements or any similar security or title retention devices which, from time to time, shall create a lien upon the leasehold estate created by the Lease and this Second Amendment and which shall be security for one or more notes, bonds or other evidences of indebtedness issued by Tenant to a Leasehold Mortgagee.

(e) Leasehold Mortgagee or Leasehold Mortgagees shall mean the lender or lenders, or their respective designee, in whose favor a Leasehold Mortgage shall have been created, together with any successor or assignee of such lender or such designee.

(f) Mortgage shall mean any one or more mortgages, deeds of trust, deeds to secure debt, loan deeds, trust indentures, security agreements or any similar security or title retention devices which, from time to time, shall create a lien upon the fee simple estate in the Premises and which shall be security for one or more notes, bonds or other evidences of indebtedness issued by Landlord to an Institutional Lender or held by an Institutional Lender.

(g) Mortgagee shall mean the Institutional Lender, or its designee, in whose favor a Mortgage shall have been created, together with any successor or assignee of such Institutional Lender or such designee.

(h) Taking shall mean a taking (or the sale to a public authority after legal notice of a taking) of all or part of the Premises or any interest therein, as the result of, or in lieu of, condemnation or exercise of the power of eminent domain. A Taking shall be effective for the purposes of the Lease and this Second Amendment as of the date on which possession is required to be surrendered. For the purposes of this definition, the term "Premises" shall include the Project.

(i) Total Taking shall mean any Taking (other than for temporary use) of the fee of the entire Premises, or any part of the Premises that, in Tenant's reasonable opinion (but subject to written confirmation by the Leasehold Mortgagee holding the first lien on Tenant's interest in the Premises, such confirmation not to be unreasonably withheld, conditioned or delayed), is necessary to provide adequate access or parking for the Premises, or such a substantial part of the Premises as, in Tenant's reasonable opinion (but subject to written confirmation by the Leasehold Mortgagee holding the first lien on Tenant's interest in the Premises, such confirmation not to be unreasonably withheld, conditioned or delayed), shall have the result that the portion of the Premises remaining after such Taking (even if restoration were made) will be economically unfeasible for Tenant. For the purposes of this definition, the term "Premises" shall include the Project.

3. **Mortgages.**

   (a) **Leasehold Mortgages.**

   (i) At any time and from time to time during the term of the Lease, as defined in paragraph 2 of the Initial Lease, Tenant may create one or more Leasehold Mortgages upon Tenant's interest in the leasehold estate created by the Lease and this Second Amendment and may enter into any and all extensions, modifications, amendments and refinancings of any such Leasehold Mortgages; provided, that each such Leasehold Mortgagee is an Institutional Lender.

   (ii) Any Leasehold Mortgagee that obtains possession of the Premises or any purchaser at Foreclosure or recipient of an assignment in lieu of Foreclosure shall be liable only during that period in which the Leasehold Mortgagee is a tenant in possession or any such purchaser or recipient has ownership of the leasehold estate, as the case may be, for the performance of those terms, covenants and conditions of the Lease and this Second Amendment that are to be carried out and performed by Tenant.

   (iii) Any termination or cancellation of the Lease on account of a breach or default shall not be effective unless Landlord has complied with the provisions of this Section 3. Notwithstanding that the provisions of this Section 3 are self-operative, Landlord shall execute, acknowledge and deliver to any Leasehold Mortgagee who shall so request, such reasonable documents as shall restate any or all of the provisions of this Section 3 which are for the benefit of such Leasehold Mortgagee, and/or shall confirm for the benefit of such Leasehold Mortgagee the applicable provisions of this Section 3.

   (b) **Notice and Cure.**

   (i) Upon Tenant's default in the performance of any of Tenant's obligations under the Lease and/or this Second Amendment, or breach of any covenant therein and/or herein, Landlord shall give to each Leasehold Mortgagee at the last address of such party furnished Landlord by or on behalf of such Leasehold Mortgagee, a notice of that default, or a copy of any notice or demand to Tenant, specifying the default. Each Leasehold Mortgagee shall have the right, but not the obligation, to cause the same to be remedied during the same time period as is given Tenant after the giving of such notice to Tenant, plus in each instance, the additional periods of time specified in Sections 3(b)(ii) and (iii) of this Second Amendment. Any cure by a Leasehold Mortgagee hereunder prior to Foreclosure of its Leasehold Mortgage shall be deemed to be a cure by Tenant. Tenant authorizes each Leasehold Mortgagee to take any such action at such Leasehold Mortgagee's option and does hereby authorize entry upon the Premises for such purpose.

   (ii) Irrespective of any notice given pursuant to Section 3(b)(i) of this Second Amendment, if any default by Tenant shall occur which entitles Landlord to terminate the Lease, and Tenant shall have failed to cure or remedy any default or breach of covenant under the Lease and this Second Amendment by the expiration of any time period available for Tenant to do so, Landlord shall give each Leasehold Mortgagee notice of such failure to cure and of Landlord's intent to so terminate at least forty-five (45) days in advance of the proposed effective date of such termination. The provisions of Section 3(b)(iii) of this Second Amendment shall apply if, during such forty-five (45) day termination notice period, any Leasehold Mortgagee shall: (1) notify Landlord of such Leasehold Mortgagee's desire to nullify such notice; and (2) pay all ground rent and all other sums then due and in arrears as specified in the termination notice to such Leasehold Mortgagee and, as the

same becomes due, which may become due during such forty-five (45) day period; and (3) comply with all non-monetary requirements of the Lease and this Second Amendment then in default and reasonably susceptible of being complied with by such Leasehold Mortgagee; provided however, if such non-monetary requirements of the Lease and/or this Second Amendment then in default are not reasonably susceptible of cure by such Leasehold Mortgagee or cannot reasonably be cured within such forty-five (45) day period, then the Leasehold Mortgagee shall commence to comply with such non-monetary requirements during such forty-five (45) day period that are reasonably susceptible of cure and thereafter in good faith and with reasonable diligence and continuity, prosecute the curing of same to completion.

    (iii) If Landlord shall elect to terminate the Lease by reason of any default by Tenant, and a Leasehold Mortgagee shall have proceeded in the manner provided for in Section 3(b)(ii) of this Second Amendment, the specified date for the termination of the Lease as fixed by Landlord in its termination notice shall be initially extended for a reasonable time, not exceeding six (6) months, as may be required to enable the Leasehold Mortgagee to acquire or sell Tenant's leasehold estate by Foreclosure or otherwise, provided that such Leasehold Mortgagee shall, during such period: (1) pay the ground rent and all other sums under the Lease and this Second Amendment as the same become due, and continue with diligence and continuity its good faith efforts to perform all of Tenant's obligations under the Lease and this Second Amendment, excepting any non-monetary obligation in default and not reasonably susceptible of being cured by such Leasehold Mortgagee; and (2) if not enjoined or stayed, institute such proceedings as may be necessary to acquire or sell Tenant's leasehold estate by Foreclosure of the Leasehold Mortgage or other appropriate means and prosecute the same to completion.

    (iv) If at the end of the reasonable period referred to in Section 3(b)(iii) of this Second Amendment, such Leasehold Mortgagee is complying with Section 3(b)(iii), the Lease shall not then terminate, and the time for completion by such Leasehold Mortgagee of its proceedings shall continue so long as such Leasehold Mortgagee, to the extent not enjoined or stayed, proceeds to complete steps to acquire or sell Tenant's leasehold estate by Foreclosure of the Leasehold Mortgage or by other appropriate means with reasonable diligence and continuity. Nothing in this Section 3(b), however, shall be construed to extend the Lease beyond the original term thereof, nor to require a Leasehold Mortgagee to continue such Foreclosure or other proceedings after the default by Tenant has been cured. If the default by Tenant shall be cured and the Leasehold Mortgagee shall discontinue such Foreclosure or other proceedings, the Lease shall continue in full force and effect as if no default by Tenant had occurred.

    (v) If a Leasehold Mortgagee is complying with Section 3(b)(iii) upon the acquisition of the leasehold estate by such Leasehold Mortgagee or its designee or any other purchaser at a Foreclosure sale or otherwise, the Lease shall continue in full force and effect, and if there are outstanding defaults by Tenant under the Lease and/or this Second Amendment which are not reasonably susceptible of being cured by the Leasehold Mortgagee or such purchaser, as applicable, such past defaults shall be deemed to have lapsed and to have been cured or waived as to the Leasehold Mortgagee or such purchaser upon such party's entry into possession of the Premises hereunder, and after such entry, the Leasehold Mortgagee or such purchaser, as the case may be, shall remedy the defaults reasonably susceptible of cure in accordance with the terms of the Lease and this Second Amendment.

    (vi) If a Leasehold Mortgagee shall become the owner and holder of Tenant's interest in the Lease and this Second Amendment by Foreclosure of its Leasehold Mortgage or

otherwise, or in the event Landlord shall enter into a new lease of the Premises with a Leasehold Mortgagee pursuant to Section 3(b)(vii) of this Second Amendment, then the Leasehold Mortgagee may at any time thereafter assign the Lease and this Second Amendment or such new lease without Landlord's prior consent, notwithstanding the terms and conditions of paragraph 14 of the Initial Lease; provided, that no assignment of the Lease and this Second Amendment or such new lease by the assignee shall be made without prior compliance with paragraph 14 of the Initial Lease. In addition, the restrictions in paragraph 14 of the Initial Lease shall not apply to any Foreclosure or other disposition of the Premises occurring in connection with a Leasehold Mortgage and/or the note secured thereby.

(vii) In the event of the termination of the Lease as a result of a default by Tenant, Landlord shall, in addition to providing the notices of Tenant's default and termination as required by Sections 3(b)(i) and (ii) of this Second Amendment, provide each Leasehold Mortgagee with written notice that the Lease has been terminated, together with a statement of all sums which would at that time be due under the Lease and this Second Amendment but for such termination, and of any other default by Tenant then known to Landlord. Landlord agrees to enter into a new lease of the Premises with such Leasehold Mortgagee or its designee, effective as of the date of termination, at the ground rent, and upon the same terms, covenants and conditions contained in this Lease and the Second Amendment, provided:

(1) Such Leasehold Mortgagee or its designee shall make written request upon Landlord for such new lease within sixty (60) days after the date such Leasehold Mortgagee receives Landlord's notice of termination of the Lease given pursuant to this Section 3(b)(vii).

(2) Such Leasehold Mortgagee or its designee shall pay to Landlord at the time of the execution and delivery of such new lease, any sums which would at the time of execution and delivery thereof be due pursuant to the Lease and this Second Amendment but for such termination and, in addition thereto, all reasonable expenses, including reasonable attorney's fees, which Landlord shall have incurred by reason of such termination and the execution and delivery of the new lease and which have not otherwise been received by Landlord from Tenant or other party in interest under Tenant.

(3) Such Leasehold Mortgagee or its designee shall agree to remedy any default by Tenant of which the Leasehold Mortgagee was notified by Landlord's notice of termination and which is reasonably susceptible for being so cured by such Leasehold Mortgagee or its designee.

(4) Any new lease made pursuant to this Section 3(b)(vii) shall have the benefit of Section 3(c) of this Second Amendment and the tenant under such new lease shall have the same right, title and interest in and to the Project and the Premises as Tenant had under the Lease and the Second Amendment.

(5) Such Leasehold Mortgagee or its designee shall be liable to perform the obligations imposed on the tenant by such new lease only during the period it has ownership of such leasehold estate.

If more than one Leasehold Mortgagee has the right to enter into a new lease, the new lease shall be delivered to the Leasehold Mortgagee making such election holding the prior lien.

(c) <u>Landlord's Liens</u>. The Lease and this Second Amendment are subject and subordinate to the Mortgage that is the first lien on Landlord's interest in the Premises; provided, however, that such subordination is expressly conditioned upon the Mortgagee's agreement that so long as the Lease and this Second Amendment have not been terminated pursuant to Section 5 of this Second Amendment, such subordination shall not affect any of Tenant's or any Leasehold Mortgagee's rights under the Lease and/or this Second Amendment, nor shall any foreclosure or other enforcement action pursuant to any Mortgage or document executed in connection therewith terminate the Lease and/or this Second Amendment or otherwise disturb Tenant's possession of the Premises.

(d) <u>No Liability</u>. A Leasehold Mortgagee shall have no liability under the Lease and this Second Amendment unless and until the Leasehold Mortgagee becomes a mortgagee in possession or a tenant by virtue of a new lease.

4. <u>Condemnation</u>. Paragraph 16 of the Initial Lease is deleted in its entirety. Accordingly, the following provisions now govern condemnation:

(a) <u>Taking</u>. In the case of a Taking, each party will notify the other promptly after it learns of such Taking. Tenant and Landlord shall have the right to negotiate with the condemning authority, with any agreement being subject to the approval of the Leasehold Mortgagee holding the first lien on Tenant's interest in the Premises, such consent not to be unreasonably withheld, conditioned or delayed. The parties shall use commercially reasonable efforts to have the condemning authority apply Fair Market Value (as such term is defined below) in determining the award to be paid for the Taking, and to cause such award to be paid pursuant to this Section 4 to the designated payees, as their interests may appear.

(b) <u>Total Taking</u>. In case of a Total Taking, then the Lease and this Second Amendment will terminate on the earlier of the vesting of title to the Premises in the condemning authority, or the taking of possession of the Premises by the condemning authority.

(c) <u>Partial Taking</u>. In the event of a Taking of a portion of the Premises that not a Total Taking, then and in that event:

(i) The Lease and this Second Amendment shall remain in full force and effect as to the portion of the Premises remaining immediately after such Taking, with an equitable abatement of rent to the extent of the interference with Tenant's use of the Premises; and

(ii) Tenant, then using the award for such Taking, shall proceed with restoration of the Project as nearly as possible to its condition and character immediately prior to such Taking, except for any reduction in area caused thereby; provided that, in case of a Taking for temporary use, the parties shall not be required to effect such restoration until such Taking is terminated. Such a restoration shall be performed in a good and workmanlike manner and undertaken in accordance with plans and specifications submitted to and approved by Landlord, such approval not to be unreasonably withheld, conditioned or delayed. If the condemnation award is insufficient to pay the cost of repair or replacement, the deficiency shall be supplied by Tenant.

(d) <u>Application of Awards</u>. Awards and other payments on account of a Taking shall be applied as follows:

PHL_A#1697032v4



50582091
Pg: 7 of 19
12/20/2002 12:06PM

(i) Awards and payments received on account of a Total Taking (except for the portion of the award relating to relocation expenses, which shall be paid to Tenant, subject to the rights of the Leasehold Mortgagees, as their interests may appear) shall be paid in the following order to the extent sufficient:

(1) First, each Leasehold Mortgagee shall be entitled to such amounts as are due under its Leasehold Mortgage, such amounts to be distributed to the Leasehold Mortgagees in accordance with the lien priorities of their respective Leasehold Mortgages.

(2) Second, Landlord and Tenant will each be reimbursed for their respective reasonable attorneys' fees, appraisal fees, and other costs incurred in prosecuting the claim for the award.

(3) Third, Landlord shall receive $314,000.

(4) Fourth, Tenant will be paid the remaining amount.

(ii) Awards and payments received on account of a Taking, other than (A) a Taking for temporary use, or (B) a Total Taking, shall be held by the Insurance Trustee in an interest bearing account and applied to pay the cost of restoration of the Project, if restoration is required under the terms of Section 4(c) of this Second Amendment, subject, however, to provisions assuring the availability of such proceeds for the purpose of restoration of the Project under such reasonable conditions as the Insurance Trustee shall establish. The balance remaining, if any, shall be divided between Landlord and Tenant as they may agree and, in the absence of such agreement, such balance shall be paid to Landlord and Tenant in the ratio, as nearly as practicable, which (C) the then Fair Market Value of Landlord's interest in the Premises bears to (D) the Fair Market Value of Tenant's interest in the remainder of the term of the Lease, subject to the rights of the Leasehold Mortgagees, as their interests may appear.

(iii) Awards and payments received on account of a Taking for temporary use shall be held by the Insurance Trustee in an interest bearing account and applied, first, to the payment of periodic installments of interest and principal becoming due on the indebtedness secured by any Leasehold Mortgage; and second, to rent due under the Lease, as defined in paragraph 3 of the Initial Lease; provided that, if any portion of any such award or payment is made by reason of any damage to or destruction of the Premises, such portion shall be held and applied as provided in the first sentence of Section 4(d)(ii) of this Second Amendment. The balance, if any, of such awards and payments shall be paid to Tenant.

(e) Fair Market Value. The term Fair Market Value as used in Section 4 of this Second Amendment means the price (as of the date of which such price is to be determined) which a reasonable seller, willing but not obligated to sell, would accept for Landlord's interest in the Premises or Tenant's interest in the Project and the leasehold estate created by the Lease and this Second Amendment (as the case may be) and which a reasonable buyer, willing but not obligated to buy, would pay therefor in an arm's length transaction.

5. Default. Paragraph 1 of the September 28, 1983 Amendment, the provisions of which paragraph governed default by Tenant under the Lease, is hereby deleted in its entirety. Accordingly, the following provisions now govern default:

The following shall be defaults under the Lease:

(a) if Tenant shall fail to pay any installment of the annual ground rent for a period of fifteen (15) days following receipt by Tenant of notice the same is overdue;

(b) if Tenant shall fail to pay any Imposition or any other item of additional rent provided by the Lease or this Second Amendment within fifteen (15) days following receipt by Tenant of notice the same is overdue; or

(c) if Tenant shall fail to perform or observe any requirements of the Lease and this Second Amendment (other than as stated in Sections 5(a) and 5(b) of this Second Amendment) and such failure shall continue for thirty (30) days following receipt by Tenant of notice of such breach; provided, that if the default is not reasonably susceptible of cure within such thirty (30) day period, and if Tenant within such period has commenced to make diligent efforts to cure the same, Tenant shall be afforded such additional time for cure as is reasonable under the circumstances.

In the event of a default under Section 5(a) or 5(b) of this Second Amendment, the installments of the annual ground rent herein provided shall, at Landlord's option, accelerate and be due and payable at once without further notice, Landlord at its option may terminate the Lease and/or may further at its option proceed to exercise all other available legal remedies. Notwithstanding anything in the Lease or this Second Amendment to the contrary, in the event of any default other than as described in Section 5(a) or 5(b) of this Second Amendment, Landlord's rights and remedies shall be limited to bringing a suit against Tenant for the recovery of damages or obtaining injunctive relief, and in no case shall the Lease be terminated on account of any such other default. Accordingly, Landlord expressly waives any right it may have to recover possession of the Premises on account of any such non-monetary default. Without limiting the generality of the foregoing, the parties confirm that none of the provisions of Section 3 of this Second Amendment shall be deemed to permit a termination of the Lease other than as is permitted under this Section 5.

In the event the Lease is terminated prior to the end of the term hereof as a result of Tenant's default as above provided, it shall be lawful for any attorney as attorney for Tenant to file an agreement for entering in any competent court an amicable action and judgment in ejectment against Tenant and all persons claiming under Tenant for the recovery by Landlord of possession of the Premises, for which the Lease and this Second Amendment shall be its sufficient warrant, whereupon, if Landlord so desires, a writ of execution or of possession may issue forthwith without any prior writ or proceedings whatsoever, and provided that if for any reason after such action shall have been commenced, the same shall be determined and the possession of the Premises hereby demised remain in or be restored to Tenant, Landlord shall have the right upon the termination of the Lease as above set forth, to bring one or more amicable action or actions as above set forth to recover possession of the Premises. All of the remedies given to Landlord by the Lease and all rights and remedies given to it by law and equity shall be cumulative and concurrent. No termination of the Lease or recovery of the Premises shall deprive Landlord of any of its remedies or action against Tenant for rent and all other sums due at the time or which, under the terms of the Lease and this Second Amendment, would in the future become due as if there had been no termination, nor shall any action for rent, breach of covenant or resort to any other remedies for recovery of rent be deemed or construed a waiver of the right to obtain possession of the Premises.

6. <u>Estoppel Certificates</u>. Landlord and Tenant shall at any time and from time to time, within twenty (20) days after written request by the other, execute, acknowledge and deliver to the party

which has requested it or to any prospective Leasehold Mortgagee, Mortgagee, assignee or subtenant designated by Tenant, or purchaser designated by Landlord a certificate stating (a) if it is true, that the Lease and this Second Amendment are unmodified and in force and effect (or if there have been modifications, that the Lease and this Second Amendment are in force and effect as modified, and identifying the modification agreement, or if the Lease and Second Amendment are not in force and effect the certificate shall so state); (b) the date to which rental has been paid under the Lease; (c) whether there is an existing default by Tenant in the payment of any rent, additional rent, or other sum of money under the Lease and this Second Amendment; (d) whether there is any other existing default by either party under the Lease and this Second Amendment with respect to which a notice of default has been served, and if there is any such default, specifying the nature and extent thereof; (v) whether there are any set-offs, defenses or counterclaims against enforcement of the obligations of Landlord hereunder known to it; and (e) such other information as may be reasonably requested by either party.

7.  Non-Disturbance. Landlord will not unreasonably withhold or delay delivery of a non-disturbance agreement in form reasonably satisfactory to the applicable subtenant for any subtenant for whom such agreement is requested, provided the sublease is in accordance with market conditions.

8.  Additional Modifications.

    (a)  Landlord and Tenant acknowledge that commencing on January 1, 2003, the ground rent referred to in paragraph 3 of the Initial Lease shall be $44,840 annually. In addition, the reference in Paragraph 3 of the June 8, 1989 Stipulation to "thirty-five percent (35%)" is hereby changed to "forty and one-half percent (40.5%)". For so long as a Leasehold Mortgage covers the Premises, Tenant shall escrow its real estate tax payments with a Leasehold Mortgagee or its designee.

    (b)  Landlord and Tenant each agree to pay in a timely manner such parties' respective shares of any charges made by entities that provide utility services to the Premises and the land adjacent to the Premises owned by Landlord, subject, in the case of Tenant's obligations, to Landlord's prompt delivery to Tenant of any information regarding bills necessary for Tenant to calculate its share of the payment due.

    (c)  It is understood that upon prepayment of the loan encumbering Tenant's leasehold interest as of the date hereof, the provisions of paragraph 7 of the Initial Lease shall no longer be applicable

9.  Amendments.

    (a)  Notwithstanding anything to the contrary, the Lease and this Second Amendment may be amended only by a writing signed by Landlord and Tenant; provided, that no such amendment shall be effective without the prior written consent of each Leasehold Mortgagee. Such consent to material amendments may be given or withheld by the Leasehold Mortgagee holding a first lien on Tenant's interest in the Premises in its sole and absolute discretion; however, such first Leasehold Mortgagee shall not unreasonably withhold, delay or condition its consent to non-material amendments. No non-first Leasehold Mortgagee shall unreasonably withhold, delay or condition its consent to any amendment.

(b)     Landlord shall enter into amendments to the Lease from time to time if requested by a prospective Leasehold Mortgagee, as long as such amendments do not change the rent received by Landlord and do not otherwise materially and adversely affect Landlord or the Premises. Such amendments shall be subject to the prior consent of any Mortgagee that holds the first lien on Landlord's interest in the Premises, such consent not to be unreasonably withheld, conditioned or delayed.

10.     Non-Merger. Paragraph 24 of the Initial Lease is deleted in its entirety and replaced with the following sentence: "There shall be no cancellation or surrender of the Lease by joint action of Landlord and Tenant without the prior written consent of each Leasehold Mortgagee, and no merger shall result from the acquisition by, or devolution upon, any one entity of the fee and leasehold estates in the Premises." This Section is not intended to limit Landlord's unilateral right to terminate as provided in Section 3 of this Second Amendment, as limited by Section 5 of this Second Amendment.

11.     Section 365(h). Tenant's right to exercise any rights under Section 365(h) of the Bankruptcy Code is subject to the prior approval of the Leasehold Mortgagee holding a first lien on Tenant's interest in the Premises.

12.     Title. The improvements which are placed on the Premises by Tenant and which are permanently a part of Premises shall become the property of Landlord upon the expiration of the term of the Lease. Upon the expiration of the term, or other termination of the Lease for any cause, Tenant shall surrender the Premises in reasonably good condition and repair, ordinary wear and tear and damage by fire or other casualty or condemnation excepted. However, it is distinctly understood that Tenant may go upon the Premises and remove all trade fixtures placed on the Premises by Tenant and all other property placed on the Premises by it, which removal does not damage the structural portion of any building located on the Premises, and Tenant shall promptly repair all such damage (structural or otherwise) to the building by reason of such removal. Heating, plumbing, electrical and air conditioning, duct work, and related equipment shall be deemed structural portions of any such buildings and may not be removed. It is understood that during the term of the Lease, title to all buildings and improvements on the Premises shall be vested in Tenant. However, in the event the Lease is terminated by Landlord, then said improvements shall, upon termination, become Landlord's property.

13.     Holding Over. In the event that Tenant should remain in the Premises beyond the expiration or earlier termination of the Lease, such holding over in itself shall not constitute a renewal or extension of the Lease, but such holding over shall be on a month-to-month basis upon the same terms and conditions in effect, except the monthly ground rental, which shall be equal to one hundred fifty percent (150%) of the ground rent in effect at such expiration or termination (prorated on a monthly basis) and Tenant shall surrender possession of the Premises to Landlord immediately on Landlord having demanded the same. Nothing in the provisions of the Lease or this Second Amendment shall be deemed in any way to give Tenant any right to remain in possession of the Premises after such expiration or termination, regardless of whether Tenant has paid any such rent to Landlord.

14.     Security. Commencing on January 1, 2003, Tenant agrees to reimburse Landlord for thirty-five percent (35%) of the reasonable costs of providing common security to the Premises and the property adjacent to the Premises owned by Landlord, within thirty (30) days of the submission of evidence reasonably satisfactory to Tenant of such costs. Such costs shall not exceed in any calendar

year those set forth in an annual budget for security submitted for approval by Landlord to Tenant no later than November 30 of the prior year, such approval not to be unreasonably withheld. The Agreement between Landlord and Tenant dated January 4, 1989 with respect to security is hereby terminated as of the date hereof.

15. Notices. Any notices, statements, demands, consents, approvals or other communications required or permitted to be given or to be served upon either party hereto, in connection with the Lease and/or this Second Amendment ("Notices") shall be in writing and shall be delivered personally, sent by a nationally recognized overnight delivery service or sent by United States certified or registered mail, return receipt requested. Notice shall be deemed to have been given and received: (i) if by hand delivery, upon delivery; (ii) if by overnight courier, on the date scheduled for delivery, and (iii) if by United States certified or registered mail, return receipt requested, on the day received. Such Notices shall be given to the parties at their following respective address or at such other address as such party may hereafter designate to the other parties in writing in the manner hereinabove provided:

| | |
|---|---|
| If to Landlord: | Kiryat Greenbriar<br>280 Aimee Drive<br>Freehold, New Jersey 07728 |
| With a copy to: | Klehr, Harrison, Harvey, Branzburg & Ellers, LLP<br>260 S. Broad Street<br>Philadelphia, Pennsylvania 19102-5003<br>Attention: Denise M. Day, Esquire |
| If to Tenant: | AIMCO<br>2000 S Colorado Blvd.<br>Tower Two – Suite 2-1000<br>Denver, Colorado 80222<br>Attention: Peter Kompaniez, President |
| With a copy to: | Ballard Spahr Andrews & Ingersoll, LLP<br>1735 Market Street, 51st Floor<br>Philadelphia, Pennsylvania 19103-7599<br>Attention: Alan S. Ritterband, Esquire |

While any Leasehold Mortgage is in effect and should Landlord be advised in writing of the name and address of such Leasehold Mortgagee, duplicate copies of all Notices shall be sent in the manner set forth in this Section 15 to each such Leasehold Mortgagee. Other communications to Leasehold Mortgagees required under this Second Amendment shall also be given as provided in this Section 15.

16. Recording. This Second Amendment shall be duly recorded by Tenant in the appropriate land records of the Department of Records for the City of Philadelphia.

17. Governing Law. The Lease and this Second Amendment shall be governed by and interpreted under the laws of the Commonwealth of Pennsylvania without reference to the choice of laws rules thereof.

18. **Integration**. This Second Amendment and the Lease contain the whole agreement between Tenant and Landlord with respect to the subject matter hereof and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever.

19. **Effect on Lease**. All of the terms, conditions, and provisions of the Lease not otherwise affected by this Second Amendment shall remain in full force and effect and shall continue to be binding on the parties.

20. **Successors and Assigns**. This Second Amendment shall be binding upon and inure to the benefit of the parties hereto, their successors and permitted assigns, and any reference to Landlord or Tenant in this Second Amendment shall include reference to their respective successors, assigns and transferees, unless the contrary is explicitly provided.

21. **Consent**. Landlord hereby consents to the assignment of Tenant's interest in the Lease and this Second Amendment to Pavilion Preservation, L.P.; provided that such assignment shall not relieve Tenant of its obligations under the Lease and this Second Amendment.

22. **Counterparts**. This Second Amendment may be executed in any number of counterparts, each of which shall be an original, and such counterparts together shall constitute one and the same instrument.

*[SIGNATURES ON NEXT PAGE]*

PHL_A#1697032v4

50592091
Pg: 13 of 19
12/20/2002 12:08PM

IN WITNESS WHEREOF, the undersigned have caused this Second Amendment to be executed as of the day and year first above written.

**LANDLORD:**

KIRYAT GREENBRIAR, L.P., a Pennsylvania limited partnership

By: Greenbriar Club Associates, Inc., a Pennsylvania corporation, its sole general Partner

By: _____
Name: Yu Shaun Yeh
Title:  President

**TENANT:**

PAVILION ASSOCIATES, a Pennsylvania limited partnership

BY: THE NATIONAL HOUSING PARTNERSHIP, a District of Columbia limited partnership, General Partner

BY: NATIONAL CORPORATION FOR HOUSING PARTNERSHIPS, General Partner

By: _[signature]_
Name: Loree Gruber
Title: Executive Vice President

PHL_A #1597032 v4

50582091
Pg: 14 of 19
12/20/2002 12:06PM

IN WITNESS WHEREOF, the undersigned have caused this Second Amendment to be executed as of the day and year first above written.

LANDLORD:

KIRYAT GREENBRIAR, L.P., a Pennsylvania limited partnership

By: Greenbriar Club Associates, Inc., a Pennsylvania corporation, its sole general Partner

By: _____
Name: Yu-Shaun Yeh
Title: President

TENANT:

PAVILION ASSOCIATES, a Pennsylvania limited partnership

BY: THE NATIONAL HOUSING PARTNERSHIP, a District of Columbia limited partnership, General Partner

BY: NATIONAL CORPORATION FOR HOUSING PARTNERSHIPS, General Partner

By: _____
Name: _____
Title: _____

COMMONWEALTH OF PENNSYLVANIA    )
                                )   SS
COUNTY OF _____                )

On this, the ___ day of December 2002, before me, a Notary Public in and for the Commonwealth of Pennsylvania, personally appeared Yu Shaun Yeh, who acknowledged himself to be the President of Greenbriar Club Associates, Inc., the general partner of Kiryat Greenbriar, L.P., a Pennsylvania limited partnership, and that he, as such officer, being authorized to do so, executed the foregoing instrument on behalf of such corporation for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public
My Commission Expires:


COMMONWEALTH OF PENNSYLVANIA    )
                                )   SS
COUNTY OF Philadelphia          )

On this, the 16th day of December 2002, before me, a Notary Public in and for the Commonwealth of Pennsylvania, personally appeared Lane Graber , who acknowledged himself/herself to be the Executive Vice President of the National Corporation for Housing Partnerships, the general partner of The National Housing Partnership, a District of Columbia limited partnership and the general partner of Pavilion Associates, a Pennsylvania limited partnership, and that he/she, as such officer, being authorized to do so, executed the foregoing instrument on behalf of Pavilion Associates for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public
My Commission Expires:

> Notarial Seal
> Margaret M. Manion, Notary Public
> Philadelphia, Philadelphia County
> My Commission Expires Feb. 23, 2004
> Member, Pennsylvania Association of Notaries

STATE OF NEW JERSEY )
) SS.
COUNTY OF MONMOUTH )

     On this, the _10_ day of December 2002, before me, a Notary Public in and for the State of New Jersey, personally appeared Yu Shaun Yeh, who acknowledged himself to be the President of Greenbriar Club Associates, Inc., the general partner of Kiryat Greenbriar, L.P., a Pennsylvania limited partnership, and that he, as such officer, being authorized to do so, executed the foregoing instrument on behalf of such corporation for the purposes therein contained.

     IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                                _William H. Passaic_
                                Notary Public
                                My Commission Expires:

                                          WILLIAM H. PASSAIC
                                          NOTARY PUBLIC OF NEW JERSEY
                                          My Commission Expires February 9, 2006

COMMONWEALTH OF PENNSYLVANIA )
) SS.
COUNTY OF _____ )

     On this, the ____ day of December 2002, before me, a Notary Public in and for the Commonwealth of Pennsylvania, personally appeared _____ _____, who acknowledged himself/herself to be the _____ of the National Corporation for Housing Partnerships, the general partner of The National Housing Partnership, a District of Columbia limited partnership and the general partner of Pavilion Associates, a Pennsylvania limited partnership, and that he/she, as such officer, being authorized to do so, executed the foregoing instrument on behalf of Pavilion Associates for the purposes therein contained.

     IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                                _____
                                Notary Public
                                My Commission Expires:

## CONSENT OF MORTGAGEE

The undersigned, which is authorized to act on behalf of the Mortgagee, intending to be legally bound, hereby consents to this Second Amendment and, without limiting the generality of the foregoing, agrees to Sections 3(c) and 9(b) of this Second Amendment.

LASALLE BANK NATIONAL ASSOCIATION, as Trustee

By: Lend Lease Asset Management, L.P., a Texas limited partnership
Its: Special Servicer

By: Pearl Mortgage, Inc., a Delaware corporation
Its: General Partner

By: _____
Name: Michael O'Hanlon
Title: Vice President
Asset Management Division

STATE OF TEXAS        )
                      ) SS
COUNTY OF DALLAS      )

Before me, a notary public in and for the State of Texas, personally appeared Michael O'Hanlon, a Vice President - Asset Management Division of Pearl Mortgage, Inc., a Delaware corporation, the general partner of Lend Lease Asset Management, L.P., a Texas limited partnership, Special Servicer for LaSalle Bank National Association, as Trustee, who acknowledged to me that he executed such instrument on behalf of such corporation and limited partnership as the act and deed of LaSalle Bank National Association, as Trustee.

_____
Notary Public, State of Texas

My commission expires:

KIM D HOLMES
COMMISSION EXPIRES:
AUGUST 19, 2006

(seal)

PHL_A #1697032 v4

50582091
Pg: 18 of 19
12/20/2002 12:08PM

EXHIBIT "A"
Legal Description

ALL THAT CERTAIN lot or piece of ground Situate in the 52nd Ward of the City of Phila described as follows, to wit:

BEGINNING at an interior point in the bed of a pond and a right of way for drainage which interior point is measured North 17 degrees, 58 minutes, 59.44 seconds East the distance of 100.50 feet (U.S.S.) from an angle point which angle point is measured North 13 degrees, 44 minutes, 17 seconds East the distance of 77.05 feet (U.S.S.) from a point which point is measured North 61 degrees, 52 minutes, 29 seconds West the distance of 332.01 feet (U.S.S.) from a point on a shore which point is measured North 09 degrees, 53 minutes, 31 seconds East 297.30 feet (U.S.S.) from a point on the Northwesterly side of Conshohocken Avenue (80 feet wide) which point is measured North 79 degrees, 52 minutes, 12.9 seconds East along the said Northwesterly side of Conshohocken Avenue the distance of 1095.734 feet (U.S.S.) from a point of tangent which point of tangent is measured Southeastwardly on the arc of a circle curving to the left connecting the said Northwesterly side of Conshohocken Avenue and the Northeasterly side of 40th Street (70 feet wide).

THENCE extending North 17 degrees, 58 minutes, 59.44 seconds East passing partly through a right of way for drainage purposes partly crossing a pond and passing partly through a stream and crossing a stream the distance of 523.37 feet (U.S.S.) to a point.

THENCE South 72 degrees, 01 minute, 01 second East partly crossing said right of way for drainage purposes and crossing a stream 189.99 feet (U.S.S.) to an angle point.

THENCE South 40 degrees, 23 minutes, 45 seconds East 69.33 feet (U.S.S.) to a point.

THENCE Southwestwardly on the arc of a circle curving to the left having a radius of 380 feet the arc distance of 217.77 feet (U.S.S.) to a point of tangent;

THENCE South 16 degrees, 46 minutes, 10 seconds West 263.50 feet (U.S.S.) to a point.

THENCE North 76 degrees, 39 minutes, 01 second West partly recrossing said right of way for drainage and partly recrossing said pond 199.26 feet (U.S.S.) to a point in the beds thereof being the first mentioned point and Place of Beginning.

BEING the same Leasehold Estate which was Leased from West Village to W V III by Lease dated November 29, 1973 and recorded in Philadelphia County in Deed Book DCC 515, Page 466

AND the above-recited Lease was Assigned by Assignment and Assumption Agreement from W.V III to Pavilion Associates dated February 16, 1984 and recorded February 24, 1984 in Deed Book ALO-39, Page 247

Parcel No.: 118N7 42

19.

50582091
Pg: 19 of 19
12/20/2002 12:06PM