# EXHIBIT C

D 0039 247

COMMONWEALTH LAND
TITLE INSURANCE COMPANY
C.733193·m

## ASSIGNMENT AND ASSUMPTION AGREEMENT

KNOW ALL MEN BY THESE PRESENTS, that WVIII, a Pennsylvania limited partnership ("Assignor") for good and valuable consideration, receipt of which is hereby acknowledged, and intending to be legally bound, hereby sells, assigns, transfers and sets over unto Pavilion Associates, a Pennsylvania limited partnership and its successors and assigns ("Assignee"), all of Assignor's right, title and interest as tenant, under, in and to that certain lease dated November 28, 1973 between West Village, a Pennsylvania limited partnership, as landlord, and Assignor, as tenant, which lease is for that certain real property known as The Pavilion, located on 3901 Conshohocken Avenue, Philadelphia, Pennsylvania and more specifically described in Exhibit "A" attached hereto and made a part hereof (said lease is hereinafter referred to as the "Lease" and true and correct copies of the Lease are attached hereto as Exhibit "B" and made a part hereof).

Assignee covenants to assume and hereby assumes all of Assignor's interest in, and obligations under, the Lease, from and after the date hereof, and covenants and agrees with Assignor to perform and be bound by all of the terms, covenants and conditions of the Lease.

Assignee hereby agrees to indemnify, defend and hold harmless Assignor from and against any claim, cost, charge or liability (including, without limit, court costs and reasonable attorney's fees), which Assignor may incur or suffer arising under or on account of the Lease, based on claims which arise from and after the date hereof, subject

D 0039 248

however to any limitation or contrary provision set forth in a certain Purchase Agreement dated October 6, 1983 between Assignor and Assignee (the "Purchase Agreement"). *predecessor in interest, The National Housing Partnership*

Assignor hereby agrees to indemnify, defend and hold harmless Assignee from and against any claim, cost, charge or liability (including, without limit, court costs and reasonable attorney's fees), which Assignee may incur or suffer arising under or on account of the Lease, based on claims which arose prior to the date hereof, subject however to any limitation or contrary provision set forth in the Purchase Agreement.

This Agreement shall be construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania and shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

IN WITNESS WHEREOF, Assignor and Assignee have executed this Agreement this 16th day of February, 1984.

WITNESS:

ASSIGNOR:

WVIII, a Pennsylvania limited partnership

By: _____ (SEAL)
Richard J. Fox,
General Partner

By: THE PROSPECT COMPANY, a
Delaware corporation,
General Partner

By: _____
Second Vice President
R. L. Morgan

Attest: _____
Assistant Secretary
B. L. Buzard

(Corporate Seal)

ASSIGNEE:

PAVILION ASSOCIATES, a Pennsylvania
limited partnership

By: THE NATIONAL HOUSING PARTNERSHIP,
a District of Columbia limited
partnership, General Partner

(Signatures continued on page 3)

- 2 -

D 0039 249

(Signatures continued from page 2)

By: NATIONAL CORPORATION FOR
HOUSING PARTNERSHIPS,
General Partner

By: _John A. Kotch_
Vice-President
REGIONAL DIRECTOR

Attest: _William E. Carey_
Assistant Secretary

(Corporate Seal)

- 3 -

D 0039 250

COMMONWEALTH OF PENNSYLVANIA:
                   : SS.
COUNTY OF *Philadelphia* :

On the 6th day of *February*, 1984, before me, the subscriber, a Notary Public in and for the Commonwealth and County aforesaid, personally appeared Richard J. Fox, who acknowledged himself to be a General Partner of WVIII, a Pennsylvania limited partnership, and that he, as such general partner, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the partnership by himself as general partner, and desired that the same might be recorded as such.

WITNESS my hand and seal the day and year aforesaid.

                      _____
                      Notary Public

My Commission Expires: WILLIAM BROWN
                      Notary Public, Phila., Co., Pa.
                      My Commission expires
                      January 7, 1987

COMMONWEALTH OF PENNSYLVANIA:
                   : SS.
COUNTY OF *Philadelphia* :

On the 10th day of *February*, 1984, before me, the subscriber, a Notary Public in and for the Commonwealth and County aforesaid, personally appeared *John D. Vergelas* and *William E. Cooper*, who acknowledged themselves to be Vice President and Assistant Secretary, respectively, of The National Corporation for Housing Partnerships, General Partner of the National Housing Partnership, General Partner of Pavilion Associates, a Pennsylvania limited partnership, and that they, as such officers, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation as such officers, and desired that the same might be recorded as such.

WITNESS my hand and seal the day and year aforesaid.

                      _____
                      Notary Public

My Commission Expires:

                      WILLIAM BROWN
                      Notary Public, Phila., Co., Pa.
                      My Commission expires
                      January 7, 1987

D 0039 251

STATE OF CONNECTICUT
COMMONWEALTH OF PENNSYLVANIA :
                                        : SS. CITY OF HARTFORD
COUNTY OF ___HARTFORD___           :

   On the 15th day of ___February___ , 1984, before
me, the subscriber, a Notary Public in and for the Common-
wealth and County aforesaid, personally appeared ___R. L. Morgan___ ,
and ___J. L. Buzard___ , who acknowledged themselves to
be Vice President and Assistant Secretary, respectively, of
The Prospect Company, General Partner of WVIII, a Pennsylvania
limited partnership, and that they, as such officers, being
authorized to do so, executed the foregoing instrument for
the purposes therein contained by signing the name of the
corporation as such officers, and desired that the same
might be recorded as such.

   WITNESS my hand and seal the day and year aforesaid.

                              _Patricia H. Csaszar_
                              Notary Public
                              Patricia H. Csaszar
                   My Commission Expires: March 31st, 1984

D 0039 252

ALL THAT CERTAIN lot or piece of ground:
SITUATE in the 52nd Ward of the City of Philadelphia described as follows, to wit:
BEGINNING at an interior point in the bed of a pond and a right of way for drainage
which interior point is measured North 17 degrees, 53 minutes, 59.44 seconds, East
the distance of 100.50 feet (U.S.S.) from an angle point which angle point is
measured North 17 degrees, 44 minutes, 37 seconds, East the distance of 77.05 feet
(U.S.S.) from a point which point is measured North 64 degrees, 52 minutes, 29
seconds, West the distance of 332.01 feet (U.S.S.) from a point on a stone which
point is measured North 9 degrees, 53 minutes, 31 seconds, East 297.30 feet (U.S.S.)
from a point on the Northwesterly side of Conshohocken Avenue (80 feet wide) which
point is measured North 79 degrees, 52 minutes, 12.9 seconds, East along the said
Northwesterly side of Conshohocken Avenue the distance of 1095.734 feet (U.S.S.)
from a point of tangent which point of tangent is measured Southeastwardly on the
arc of a circle curving to the left connecting the said Northwesterly side of
Conshohocken Avenue and the Northeasterly side of 40th Street (70 feet wide)
having a radius of 50 feet, the arc distance of 81.860 feet (District Standard)
from a point of tangent on the said Northeasterly side of 40th Street (70 feet
wide) thence extending North 17 degrees, 53 minutes, 59.44 seconds, East passing
partly through a right of way for drainage purposes partly crossing a pond and
passing partly through a stream and crossing a stream the distance of 523.37
feet (U.S.S.) to a point; thence South 72 degrees, 01 minute, 01 second, East
partly crossing said right of way for drainage purposes and crossing a stream
189.99 feet (U.S.S.) to an angle point; thence South 40 degrees, 23 minutes,
45 seconds, East 69.72 feet (U.S.S.) to a point; thence Southeastwardly on the
arc of a circle curving to the left having a radius of 300 feet the arc distance
of 217.77 feet (U.S.S.) to a point of tangent; thence South 16 degrees, 46
minutes, 10 seconds, West 263.50 feet (U.S.S.) to a point; thence North 76
degrees, 39 minutes, 01 second,. West partly recrossing said right of way for
drainage and partly recrossing said pond 199.26 feet (U.S.S.) to a point in the
beds thereof being the first mentioned point and place of beginning.

EXHIBIT "A"

<u>EXHIBIT B</u>

D 0039 253

<u>LEASE AGREEMENT</u>  #11

THIS AGREEMENT, made this 29th day of November ,973, by
and between WEST VILLAGE, a Pennsylvania limited partnership with
its principal offices at 100 West Avenue, Jenkintown, Pennsylvania,
19046 (hereinafter called "Landlord") and WV III, a Pennsylvania
limited partnership with its principal offices at 100 West Avenue,
Jenkintown, Pennsylvania, 19046 (hereinafter called "Tenant").

<u>WITNESSETH:</u>

1.  <u>Premises.</u>  Subject to the terms and conditions hereinafter
set forth, the Landlord hereby leases to Tenant , and Tenant hereby
leases from Landlord, for improvement and use for multi-unit residential
purposes and for any other use or uses permitted by the applicable
ordinances of the City of Philadelphia, all that certain lot or
parcel of ground, with the improvements, if any, thereon erected,
in the City and County of Philadelphia, Pennsylvania, all as shown
on Exhibit A which is attached hereto and made a part hereof,
together with all easements, alleys, rights of ingress and egress
now or hereafter belonging to or appertaining to the premises and
all other appurtenances of said premises, all of which are hereinafter
collectively called the "Premises".

UNDER AND SUBJECT, however, to easements, restrictions or agree-
ments of record relating to or affecting the Premises as set forth
in Exhibit B attached hereto and made a part hereof, none of which
shall prohibit the use of the Premises for the purposes above stated.

Landlord hereby covenants that the presently existing rights
of ingress, egress and regress for pedestrian and vehicular traffic
and the rights of access for various utilities, all as more fully
set forth in a Declaration of Easement, dated November 29 ,1973

D 0039 254

and recorded in the Department of Records of Philadelphia on
197 , in Deed Book    , page    , shall not be interfered with by
Landlord or those claiming through Landlord, this covenant to be con-
strued as a covenant running with the land and binding the Landlord
and his successors in interest whomsoever.

2.   Term.  The term of this lease shall commence on the date
of execution of the mortgage on the leasehold improvements insured by
the Federal Housing Authority as more fully described in paragraph 6
hereof and shall continue for a period of 75 years thereafter.

3.   Ground Rent.  While this lease continues in full force and
effect, Tenant agrees to pay to Landlord, without notice, demand,
set-off or deduction, a net minimum annual ground rent of:

   a.  $1.00, in advance, commencing at the beginning of the
term hereof and until final endorsement by the Federal Housing
Administration of the mortgage on the leasehold improvements;
and

   b.  $16,840.00, commencing immediately following said
endorsement and continuing thereafter for the remainder of the
term.  Such rent shall be paid in equal consecutive monthly
installments of $1,370.00 in advance on the first day of each
month to the Landlord at its above address or to such other
person and at such other place as the Landlord may designate in
writing.  The first such installment payment shall be made on
the date of such final endorsement and on the first day of each
month thereafter.

4.   Additional Rent.

   (a)  Taxes and Other Impositions -  As additional rent,
Tenant shall pay throughout the term hereof, all real estate taxes,
levies, taxes other than real estate, assessments, water and sewer

-2-

D 0039 255

rents and charges, liens, charges and imposts and each and every levy
or charge of the same nature, general and special, ordinary and extra-
ordinary, foreseen and unforeseen, or any kind and nature whatsoever
(all of which are hereinafter referred to as "Impositions") which may
now or hereafter be created, levied, assessed, adjudged, imposed or
charged upon or with respect to the Premises or any improvements made
thereto, or on any part of the foregoing, or directly upon this lease
or the rents payable hereunder, or against Landlord because of Land-
lord's estate or interest herein, by any federal, state or municipal
government, or any law, ordinance or regulation thereof or of any public
authority whatsoever, including, among others, all special tax bills
and general, special or other assessments and liens or charges made
on local or general improvements or under any governmental or public
power or authority whatsoever; provided, however, if any Imposition
shall be created, levied, assessed, adjudged, imposed, charged or become
a lien with respect to a period of time which commences before or ends
after the expiration of the term of this lease (other than by reason
of breach of the terms hereby by Tenant), then Tenant shall only be
required to pay that proportion of such Imposition which is equal to
the proportion of said period which falls within the term of this lease.
It is the intention of the parties that Landlord shall receive all
rentals payable hereunder free from all Impositions upon or by reason
of the Premises and the building and improvements constructed thereon
and all expenses and charges required to be paid to maintain, repair,
renovate and carry the Premises and such building and improvements;
provided, however, that nothing in this lease shall require Tenant
to pay the principal of, or interest on, or any other payment under
any mortgage of fee title to the Premises, any franchise, estate,
inheritance, succession, capitaly levy or transfer tax of the Landlord,
or any income, excess profits or revenue tax, or any other tax, assess-
ment, charge or levy upon the rent payable by the Tenant under this
Lease.

-3-

D 0039 256

(b) **Receipts**   Tenant shall pay all Impositions before any fine, penalty, interest or cost may be added thereto for the non-payment thereof (or sooner if elsewhere in this lease required), and Tenant shall furnish Landlord, not later than five (5) days before the last day upon which they may be paid without any fine, penalty or interest, receipts or other evidence satisfactory to Landlord of the payment thereof.

(c) **Right to Contest**   Tenant may, without postponement of payment, bring proceedings for contesting the validity or amount of any Imposition, or to recover payments therefor, and Tenant agrees to save Landlord harmless from all costs and expenses in connection therewith.  Landlord shall cooperate with Tenant with respect to such proceedings to the extent reasonably necessary, but all costs, fees and expenses incurred in connection with such proceedings shall be borne by Tenant.

(d) **Payments Resulting from Defaults**   Tenant agrees to pay as additional rent any and all sums which may become due by reason of the failure of Tenant to comply with all of the covenants of this lease and pay any and all damages, costs and expenses which the Landlord may suffer or incur by reason of any default of the Tenant or failure on its part to comply with the covenants of this lease, and each of them, and also any and all damages to the Premises caused by any act or neglect of Tenant.

5.  **Net Lease.**  It is understood and agreed that this is a net lease.  It is the intention of the parties that Landlord shall receive all rentals payable hereunder free from all Impositions upon or by reason of the Premises and the building and improvements constructed thereon and all expenses and charges required to be paid to maintain, repair, renovate and carry the Premises and such building and improvements; provided, however, that nothing in this lease shall

-4-

D 0039 257

require Tenant to pay the principal of, or interest on, or any other
payment under any mortgage of fee title to the Premises, any franchise,
estate, inheritance, succession, capital levy or transfer tax of the
Landlord, or any income, excess profits or revenue tax, or any other
tax, assessment, charge or levy upon the rent payable by the Tenant
under this lease.

6.  **Improvements to the Premises.**  Tenant hereby covenants
and agrees to improve the Premises with a 12-story residential
apartment building consisting of 186,670 total gross square feet,
more or less, together with improvements accessory to such building
and necessary for its use for such purpose (the "Project").  Landlord
hereby authorizes Tenant to obtain a loan in such amount as is necessary
to construct said Project, the repayment of which is to be insured
by the Federal Housing Commissioner and secured by a mortgage on
Tenant's leasehold estate.  Tenant is further authorized to execute
a mortgage on said leasehold estate and otherwise to comply with
the requirements of the Federal Housing Commissioner for obtaining
such an insured mortgage loan.  Tenant hereby covenants and agrees
that it shall pay all installments of principal and interest and
all settlement and carrying charges on and under the said mortgage
during the term of this lease or under terms of any bond, warrant,
note or agreement executed and delivered in connection therewith.
It is further expressly agreed that Landlord shall not in any event
be required to join in the execution and delivery of said mortgage
or to in any other manner guarantee performance of the Tenant there-
under or under any said bond, warrant, note or agreement given in
connection therewith.

7.  **Right of Purchase by the Federal Housing
Commissioner.**
Notwithstanding any other provision of this lease, if and so
long as Tenant's leasehold is subject to a mortgage insured,

-5-

D 0030 258

re-insured or held by the Federal Housing Commissioner or given to the Commissioner in connection with a resale, the Federal Housing Commissioner, or his successor in office, shall have the option, in the event that he or his successor in office, through the operation of his contract of mortgage insurance, shall acquire title to the leasehold interest, to purchase good and marketable fee title to the demised premises, free of all liens and encumbrances except such as may be waived or accepted by him or his successor in office, within twelve (12) months after so acquiring the leasehold interest, for the sum of $314,000 payable in cash, or by Treasury check, provided that all rents are paid to the date of transfer of title, upon first giving sixty (60) days written notice to the Landlord or other person or corporation who may then be the owner of the fee, and the owner of the fee shall thereupon execute and deliver to the Federal Housing Commissioner, or his successor in office, a deed of conveyance to the said Premises, containing a covenant against the grantor's acts, but excepting therefrom such acts of the Tenant and those claiming by, through or under the Tenant of the leasehold interest. Nothing in this option shall require the Landlord to pay any Impositions which were due and payable by the Tenant.

8. **Insurance.**

(a) **Types of Insurance** - Tenant, at Tenant's sole cost and expense, shall maintain and keep in effect throughout the term:

(1) Insurance against loss or damage to the Project and all other improvements from time to time upon the Premises by fire and such other casualties, together with extended coverage, in an amount at least equal to the replacement cost thereof (as such replacement cost may be specified from time to time by Landlord or on the basis of a determination of such cost by a reputable appraiser) in such company or companies as shall be approved by Landlord, naming

-6-

D 0039 259

Landlord and Tenant as insureds as their respective interest may appear.

(2) Insurance against loss or liability in connection with bodily injury or death or property damage in or upon the Premises, under policies of general public liability insurance, with such limits as to each as may be reasonably required by the Landlord from time to time but not less than $500,000 for each person or $1,000,000 for each occurrence in respect to bodily injury or death and $1,000,000 for each occurrence in respect to property damage. Such insurance shall be in a company or companies approved by Landlord and shall name Landlord and Tenant as insureds as their interest may appear.

(b) Possession of Policies; Cancellation - All policies shall provide that they shall not be cancellable without at least ten (10) days written notice to Landlord. At least five (5) days prior to the commencement of the term, the originals and a signed duplicate copy of such policies shall be delivered by Tenant to Landlord and at least thirty (30) days before any such policy shall expire, Tenant shall deliver the original and a signed duplicate copy of a replacement policy to the Landlord.

(c) Waiver of Subrogation; Right under Insurance Policies- Each of the parties hereto hereby releases the other, to the extent of each party's insurance coverage, from any and all liability for any loss or damage which may be inflicted upon the property of such party even if such loss or damage shall be brought about by the fault or negligence of the other party, its agents or employees; provided, however, that this release shall be effective only with respect to loss or damage occuring during such time as the appropriate policy of insurance shall contain a clause to the effect that this release shall not affect said policy or the right of the insured to recover thereunder. If any policy does not provide for such a waiver, the

-7-

D-0039 280

party insured shall notify the party to benefit from such waiver,
and if the party to benefit therefrom requests that such a waiver
be obtained, the insured party agrees to obtain an endorsement to
its insurance policies permitting such a waiver of subrogation if
it is available and if such policies do not provide therefor. If
an additional premium is charged for such waiver, the party bene-
fiting therefrom, if it desires to have the waiver, agrees to pay
to the other the amount of such additional premium promptly upon
being billed therefor.

(d) **Rights of the Commissioner.** Notwithstanding any other
provisions of this lease, if and so long as this leasehold is subject
to a mortgage insured, re-insured or held by the Federal Housing
Commissioner or given to the Commissioner in connection with a resale,
or the Premises is acquired and held by the Commissioner pursuant
to the right of purchase granted in paragraph 7 hereof, Tenant shall
provide and pay for insurance policies in an amount and in such company
or companies and in such form, and against such risks and hazards,
as shall be approved by such mortgagee and/or the Federal Housing
Commissioner. The Landlord shall not take out separate insurance
concurrent in form or contributing in the event of loss with that
specifically required to be furnished by the Tenant to the mortgagee.
The Landlord may, at its own expense, however, take out separate
insurance which is not concurrent in form or not contributing in the
event of loss with that specifically required to be furnished by the
Tenant.

9. **Public Utility Charges.** Tenant agrees to pay or cause
to be paid all charges for gas, electricity, light, heat, steam,
power, water and sewerage, telephone or other communication ser-
vices used, and other services rendered or supplied upon or in
connection with the Premises throughout the term of this lease,

-8-

D.0039 261

and to indemnify Landlord and save Landlord harmless against any liability or damages on such account.

10. Repairs and Maintenance. Tenant covenants throughout the term of this lease, at Tenant's sole cost and expense, to take good care of the Premises, and at the termination of this lease, return the Premises in the same good order as it was at the commencement of the term, reasonable wear and tear alone excepted, and shall further take good care to keep the same in good order and condition and free of rubbish, ice and snow, and promptly at Tenant's own cost and expense to make all necessary structural and non-structural repairs, ordinary and extraordinary, foreseen or unforseen, interior and exterior with respect to all improvement on the Premises. In the event of the Tenant's failure to make such repairs or to so maintain the Premises, Landlord may enter upon the Premises and do all things necessary to cause such repairs and/or maintenance to be accomplished, all such repairs to be paid for by Tenant within thirty (30) days of invoice as additional rent.

11. Compliance with Rules, Ordinances, etc. Tenant covenants throughout the term of this lease, at Tenant's sole cost and expense, promptly to comply with all laws and ordinances and notices, orders, rules, regulations and requirements of all federal, state and municipal governments and appropriate departments, commissions, boards and officers thereof, and notices, orders, rules and regulations of the National Board of Fire Underwriters, or any other body now or hereafter constituted exercising similar functions, relating to all or any part of the Premises, exterior as well as interior, foreseen or unforeseen, ordinary as well as extraordinary, or to the fixtures and equipment thereof and the sidewalks,

-9-

D 0039 262

curbs and ways in or adjoining the Premises or to the use or manner
of use of the Premises. Tenants shall likewise observe and comply
with the requirements of all policies of public liability, fire
and all other policies of insurance at any time in force with
respect to the building and other improvements on the Premises and
the equipment thereon.

12. **Responsibility of Tenant.** Tenant will indemnify and
save Landlord harmless from any and all loss, cost and expense
resulting from claims for bodily injury, wrongful death and
property damage arising out of or in any way connected with Tenant's
use and occupancy of the Premises or resulting from any act or
omission of Tenant with respect to the area used and occupied by
Tenant, unless any such injury, death or damage results from the
negligence of Landlord or Landlord's agents, employees, servants
or contractors.

13. **Additions and Alterations.** Tenant shall have the right
to make additions, alterations and improvements and to install
electric and other fixtures and equipment in or about the Premises
with the prior written consent of the Landlord, which consent
will not be unreasonably withheld if the additions, alterations
or improvements proposed by Tenant will not weaken the structure
of the building. All signs, fixtures and equipment shall remain
the property of Tenant and shall be removed by the Tenant upon
or before any termination of this lease and Tenant will repair
any damage caused by such removal.

14. **Assignment.** Tenant shall not have the right to assign
this lease or sublet the Premises or any part thereof other than
for individual apartment tenant leases without the Landlord's
prior written consent, which will not be unreasonably withheld.
Notwithstanding any other provisions of this lease, if and so

-10-

D 0039 263

long as this leasehold is subject to a mortgage insured, re-insured
or held by the Commissioner or given to the Commissioner in con-
nection with the resale, or the demised premises are acquired
and held by him because of a default under said mortgage, the
Tenant may assign, transfer or sell his interest in the demised
premises if such assignment, transfer or sale is approved by the
Federal Housing Commissioner.  In the event of any assignment or
subletting, Tenant shall remain responsible for the payment of
rent, as herein provided, and for the performance of all of Tenant's
other obligations hereunder.

13.  Damage by Casualty.  Damage to or destruction of any
of the improvements on the Premises shall not terminate this
lease.  In the event of loss under any of the foregoing policies,
Landlord, Tenant and Tenant's mortgagee, if any, shall cooperate
in obtaining the available proceeds of insurance and all such
proceeds shall be paid directly to the Landlord and the
Tenant jointly for restoration of the destroyed or damaged
property, and for the payment of rent and Impositions, subject,
however, to the provisions of any mortgage encumbering Tenant's
leasehold interest in the Premises, provided, however, that in
the event any of such proceeds on account of such loss are not
in excess of $10,000.00, then in that event, payment will be
made directly to the Tenant, subject to the rights of said
mortgagee as aforesaid, for restoration of the damaged Premises.
It is acknowledged that the mortgage encumbering the Tenant's
leasehold interest in the Premises requires all insurance
proceeds to be paid to the mortgagee and that the foregoing
provisions of this paragraph deal only with those cases in which
the Federal Housing Administration is not involved or in those

-11-

D 0039 264

cases involving insurance coverage above and beyond that required
by the present leasehold mortgage.

    15. Condemnation.

        (a) Total Condemnation. If the entire Premises are
condemned or taken by any competent authority for a public or
quasi-public use, or if a part thereof is taken to an extent
which materially impairs or interferes with the Tenant's proper
use and enjoyment thereof, the entire award or payment of damages
(hereinafter referred to as the "Award"), following deduction
for all costs of appeal taken by either Landlord or Tenant with
respect to such condemnation Award, shall be paid as follows:

        (1) the first $ 314,000 of such balance
            shall be paid to Landlord in full
            satisfaction of Landlord's interest in
            the Premises, and

        (2) the remainder of such balance, if any,
            shall be paid to the Tenant in full
            satisfaction of the Tenant's interest in
            the Premises. Upon receipt by the Landlord
            of the aforesaid portion of the Award to
            which the Landlord is entitled hereunder
            plus all other rents and other payments due
            up to the date of the taking, this lease
            shall automatically terminate as of the
            date of taking and the Tenant shall be under
            no further obligation to the Landlord.

Notwithstanding the foregoing, none of the provisions of this sub-
paragraph (a) shall be applicable or in effect if and so long as
this leasehold is subject to a Mortgage insured, reinsured or held

-12-

D 0039 265

by the Federal Housing Commissioner or given to the Commissioner in
connection with a resale, or the demised premises are acquired and
held by him because of the default under said mortgage.

(b) **Partial Condemnation.** If only a portion of the
Premises is condemned or taken as aforesaid to an extent which does
not materially impair or interfere with the Tenant's proper use and
enjoyment thereof, this lease shall continue in full force and effect,
there shall be an equitable reduction in the annual ground rent
specified herein based proportionately upon the reduction of the
gross leaseable area of the improvements on the Premises existing
at the time of condemnation, and the Tenant shall have the right
to convert the remainder of the Premises into an architectural unit
suitable for occupancy by the Tenant and its subtenant for the purposes
for which it was then being used.  In such event, the entire Award
shall be paid to the Landlord and the Tenant jointly as their re-
spective interests may appear at the time of the taking.  Any portion
of the Award not used for restoration of the Premises as aforesaid
shall be and remain the property of the Landlord.  Notwithstanding
the foregoing, none of the provisions of this subparagraph (b) shall
be applicable or in effect if and so long as this leasehold is subject
to a mortgage insured, reinsured or held by the Federal Housing
Commissioner or given to the Commissioner in connection with a resale,
or the demised premises are acquired and held by him because of the
default under said mortgage.

(c) **Appeal of Award.**  Landlord and Tenant each reserve
the right to appeal, at its own expense, the determination of the
amount of the Award.  It is further understood and agreed that the
provisions of this paragraph 16 shall be applicable to, and shall
include the negotiated sale of all or a portion of the Premises in
lieu of condemnation.

-12-

D 039 266

(d)  **Provisions with respect to the Federal Housing Authority.**

Notwithstanding any other provisions of this lease, if and so long as this leasehold is subject to a mortgage insured, re-insured or held by the Federal Housing Commissioner or given to the Commissioner in connection with a resale, or the demised premises are acquired and held by him because of the default under said mortgage, the following provisions with respect to condemnation or a negotiated sale in lieu of condemnation shall be applicable:

(1)  if all or any part of the Premises shall be taken by condemnation, that portion of any Award attributable to the improvements or damage to the improvements shall be paid to the mortgagee or otherwise disposed of as may be provided in the insured mortgage.  Any portion of the Award attributable solely to the taking of land shall be paid to the Landlord.  After the date of taking the annual ground rent shall be reduced rateably by the proportion which the Award paid to the Landlord bears to the total value of the land as established by the amount the Federal Housing Commissioner would be required to pay upon acquisition of the fee as set forth in paragraph 7 of this Agreement;

(2)  in the event of a negotiated sale of all or a portion of the Premises in lieu of condemnation, the proceeds shall be distributed and ground rents reduced as provided in cases of

-14-

D 0039 267

condemnation in Section (1) immediately pre-
ceeding, but the approval of the Commissioner
and the mortgagee shall be required as to the
amount and division of the payment to be received.

17.  Default.  If during the term of this lease there shall
occur any of the following events:

(a)  if the Tenant shall fail to pay any installment of
the annual ground rent for a period of ten (10) days following
the due date thereof;

(b)  if the Tenant shall fail to pay any Imposition or
any other item of additional rent within the time provided by
this lease; or

(c)  if the Tenant shall fail to perform or observe
any other requirements of this lease and any such failure
other than as stated in (a) and (b) above shall continue for
fifteen (15) days following notice by Landlord to Tenant of
such breach and Tenant shall have failed within such period
to commence and make diligent efforts to cure same, then,
in any of such events, the installments of annual ground rent
herein provided shall, at Landlord's option, accelerate and
be due and payable at once without further notice, Landlord
at its option may terminate this lease, and/or may further
at its option proceed to exercise all other available legal
remedies.

In the event this lease is terminated prior to the end
of the term hereof as a result of Tenant's default as above
provided, it shall be lawful for any attorney as attorney for
Tenant to file an agreement for entering in any competent court
an amicable action and judgment in ejectment against the Tenant
and all persons claiming under the Tenant for the recovery by
the Landlord of possession of the Premises, for which this lease

-15-

D 0039 268

shall be its sufficient warrant, whereupon, if Landlord so
desires, a writ of execution or of possession may issue forthwith
without any prior writ or proceedings whatsoever, and provided
that if for any reason after such action shall have been commenced,
the same shall be determined and the possession of the Premises
hereby demised remain in or be restored to the Tenant, the
Landlord shall have the right upon any subsequent default or
defaults, or upon the termination of this lease as above
set forth, to bring one or more amicable action or actions
as above set forth to recover possession of the said
Premises. All of the remedies given to Landlord by this
lease and all rights and remedies given to it by law and
equity shall be cumulative and concurrent. No termination
of this lease or recovery of the Premises shall deprive the
Landlord of any of his remedies or action against the Tenant
for rent and all other sums due at the time or which, under
the terms of this lease, would in the future become due as
if there had been no termination, nor shall any action for
rent, breach of covenant or resort to any other remedies for
recovery of rent be deemed or construed a waiver of the right
to obtain possession of the Premises.

18. **Permits and Licenses for Improvements.** The Landlord
agrees, within ten (10) days after receipt of written request
from Tenant, it will join in any and all applications for
permits, licenses and other authorizations required by any
governmental or other body claiming jurisdiction in connection
with any work which the Tenant may do hereunder, and will also
join in any grants for easements for electric, telephone, gas,
water, sewer and such other public utilities and facilities
as may be reasonably necessary in the operation of the demised

-16-

D 0039 269

premises or of any improvements that may be erected thereon; and
if, at the expiration of such ten (10) day period, the Landlord
shall not have joined in any such application, or grants for
easements, the Tenant shall have the right to execute such
application and grants in the name of the Landlord, and,
for that purpose, the Landlord hereby irrevocably appoints
the tenant as its attorney in fact to execute such papers
on behalf of the Landlord.

19.  Notices.  All notices, demands and requests
which are required to be given by the Landlord, the Tenant,
any mortgagee or the Commissioner shall be in writing and
shall be sent by registered or certified mail, postage
prepaid, and addressed to the address of the party as given
below unless a request for a change in this address has been
sent to the party giving the notice by registered or certified
mail prior to the time when such notice is given.  Addresses
for such notices are as follows:

  To the Landlord:  C/O The Fox Companies
           Beaver Hill Apartments
           100 West Avenue
           Jenkintown, Pennsylvania   19046

  To the Tenant:   C/O The Fox Companies
           Beaver Hill Apartments
           100 West Avenue
           Jenkintown, Pennsylvania  19046

  To the Federal Housing Commissioner: *Housing and Urban Development*
*Insuring, Rental and Reports Branch, 916 Curtis Building, 6th & Walnut Sts,*
*Phila., Pa.  19106*
  To the Mortgagee Of Tenant's leasehold interest:
*The Federal Savings and Loan Association of Philadelphia*
*1229 Walnut St., Philadelphia, Pa. 19107*
*Attn: Mr. William Shaver*

20.  Federal Housing Authority Provisions with respect
to Default.

Notwithstanding any other provisions of this lease, if and
so long as this leasehold is subject to a mortgage insured,
re-insured or held by the Federal Housing Commissioner or
given to the Commissioner in connection with a resale, or

-17-

D 0039 270

the demised premises is acquired and held by him because of
a default under said mortgage:

(a) Upon any default under this lease which authorizes
the cancellation thereof by the Landlord, Landlord shall give notice
to the mortgagee and the Federal Housing Commissioner, and the mortgagee
and the Federal Housing Commissioner, their successors and assigns,
shall have the right within any time within six (6) months from the
date of such notice to correct the default and reinstate the lease
unless Landlord has first terminated the lease as provided below.

(b) At any time after two (2) months from the date a
notice of default is given to the mortgagee and the Commissioner,
the Landlord may elect to terminate the lease and require possession
of the demised premises. Upon acquiring possession of the demised
premises, Landlord shall notify Commissioner and mortgagee. Mortgagee
and Commissioner shall have six (6) months from the date of such notice
of acquisition to elect to take a new lease on the demised premises.
Such new lease shall have a term equal to the unexpired portion of
the term of this lease and shall be on the same terms and conditions
as contained in this lease, except that the mortgagee's and Commis-
sioner's liability for ground rent shall not extend beyond their occupancy
under such lease. The Landlord shall tender such new lease to the
mortgagee or Commissioner within thirty (30) days after a request
for such lease and shall deliver possession of the demised premises
immediately upon execution of the new lease. Upon executing a new
lease, the mortgagee or the Commissioner shall pay to Landlord any
unpaid ground rentals due or that would have become due under this
lease to the date of the execution of the new lease, including any
taxes which were liens on demised premises and which were paid
by Landlord, less any net rentals or other income which Landlord

-18-

P 0038 271

may have received on account of this property since the date
of default under this lease.

21. _Amendments_. This lease shall not be modified or
amended without the consent of the parties hereto, and for
so long as the leasehold is subject to a mortgage insured;
re-insured or held by the Federal Housing Commissioner or given
to the Commissioner in connection with a resale, or the demised
premises are acquired and held by him because of a default under
said mortgage, this lease shall not be modified without the
consent of the Federal Housing Commissioner.

22. _Binding Effect_. The provisions hereof shall be
binding upon and inure to the benefit of each of the parties
hereto and their respective successors and assigns, provided,
however, that no such rights, privileges or powers shall inure
to the benefit of any assignee of Tenant, immediate or remote,
unless the assignment to such assignee is permitted pursuant to
the provisions of this lease.

23. _Subordination_. Except for such periods that the
option in paragraph 7 is in effect, if the Landlord or the
holder of a mortgage of the fee title so elect and notifies
the Tenant, this lease shall then be subject and subordinate
to all the rights of the Landlord and to any and all mortgages
and other encumbrances now or hereafter placed upon the Premises.
Tenant shall execute and deliver to Landlord any instruments or
further assurances which Landlord requires in order to effect
any subordination. This provision shall be effective only if
any such mortgage or other encumbrance provides, or the holder
thereof agrees with Tenant, that neither such holder nor its
successors or assigns will take any action to interfere with
the rights of Tenant so long as Tenant is not in default hereunder.

-19-

D 0039 272

Further, this provision shall become operable only upon review and approval of its use by the Federal Housing Commissioner or his agents in each and every situation in which it is proposed by the Landlord or Mortgagee of the fee title that it be utilized, in which the interests of the Federal Housing Commissioner may be affected.

In addition, it is specifically agreed between the parties contracting, in consideration of the mutual covenants, promises, and representations contained herein, and with intent to be legally bound, that the Mortgage on the leasehold improvements and structure shall always be superior and any mortgage on the Fee Interest shall be subordinated to the Mortgage on the leasehold improvements and structure for so long as the Mortgage on the leasehold improvements and structure is insured or re-insured, or held by the Federal Housing Commissioner or given to the Commissioner in connection with a resale, or the demised premises are acquired and held by him because of a default under said Mortgage.

　　24.　Non-Merger of Estates with Respect to Federal Housing Administration -

Notwithstanding any other provisions of this Lease, if and so long as this leasehold is subject to a mortgage insured, re-insured or held by the Federal Housing Commissioner, or given to the Commissioner in connection with a resale, or the demised premises are acquired and held by him because of a default under said mortgage and Lessor should act to terminate the Leasehold Agreement under the provisions of Paragraph No. 20 herein, the following Contractual Agreement shall apply:

TO WIT:　It is understood and agreed between the Landlord and Tenant, in consideration of the mutual covenants, promises, and representations contained herein, and with intent to be legally bound, that Title to the leasehold improvements and structure shall in no case merge with the Fee Interest in the land upon

-20-

D 0039 273

the Termination of the Leasehold Agreement pursuant to
Paragraph No. 20, but shall remain separate and subject to
the encumbrances of the FHA Mortgage, and such remedies as may
be pursued by the Mortgagee of the leasehold improvements and
structure or the Federal Housing Commissioner as their interest
may appear.

23.  Entire Agreement.  It is expressly understood and agreed
that this lease and the exhibits attached thereto and forming a
part hereof as of the date hereof set forth all of the promises,
agreements, conditions and understandings between the Landlord
and the Tenant with respect to the Premises, and that there are
no promises, agreements, conditions or understandings, either
oral or written, between them with respect to the Premises as
of the date hereof other than as are herein set forth.

IN WITNESS WHEREOF, the parties hereto have hereunto set
their hands and seals the day and year first above written.

                              WEST VILLAGE, a Pennsylvania
                              limited partnership
                              By Its General Partner

                              _____
                              Richard J. Fox

                              The Prospect Company, a corporation

                              By: _____
                                  (J. Thomas Montgomery) Vice President

                              Attest: _____
                                      (R. L. Russel) Assistant Secretary

-21-

D 0038 274

EXHIBIT "A"

ALL THAT CERTAIN lot or piece of ground:

SITUATE in the 52nd Ward of the City of Philadelphia described as follows, to wit:
BEGINNING at an interior point in the bed of a pond and a right of way for drainage which interior point is measured North 17 degrees, 50 minutes, 59.44 seconds, East the distance of 100.90 feet (U.S.S.) from an angle point which angle point is measured North 17 degrees, 44 minutes, 37 seconds, East the distance of 77.05 feet (U.S.S.) from a point which point is measured North 64 degrees, 52 minutes, 29 seconds, West the distance of 332.01 feet (U.S.S.) from a point on a stone which point is measured North 9 degrees, 53 minutes, 31 seconds, East 297.30 feet (U.S.S.) from a point on the Northwesterly side of Conshohocken Avenue (60 feet wide) which point is measured North 79 degrees, 52 minutes, 12.9 seconds, East along the said Northwesterly side of Conshohocken Avenue the distance of 1095.734 feet (U.S.S.) from a point of tangent which point of tangent is measured Southeasterly on the arc of a circle curving to the left connecting the said Northwesterly side of Conshohocken Avenue and the Northwesterly side of 40th Street (70 feet wide) having a radius of 50 feet, the arc distance of 83.860 feet (District Standard) from a point of tangent on the said Northeasterly side of 40th Street (70 feet wide) thence extending North 17 degrees, 53 minutes, 59.44 seconds, East passing partly through a right of way for drainage purposes partly crossing a pond and passing partly through a stream and crossing a stream the distance of 523.37 feet (U.S.S.) to a point; thence South 72 degrees, 01 minute, 01 second, East partly crossing said right of way for drainage purposes and crossing a stream 188.99 feet (U.S.S.) to an angle point; thence South 40 degrees, 23 minutes, 45 seconds, East 69.72 feet (U.S.S.) to a point; thence Southwesterly on the arc of a circle curving to the left having a radius of 380 feet the arc distance of 217.77 feet (U.S.S.) to a point of tangent; thence South 16 degrees, 46 minutes, 10 seconds, West 263.50 feet (U.S.S.) to a point; thence North 76 degrees, 29 minutes, 01 second,. West partly recrossing said right of way for drainage and partly recrossing said pond 199.26 feet (U.S.S.) to a point in the beds thereof being the first mentioned point and place of beginning.

O-0039-275

WV III, a Pennsylvania limited
partnership By its General Partners

_Richard J. Fox_

Richard J. Fox

The Prospect Company, a corporation

By: _J. Thomas Montgomery_

(J. Thomas Montgomery) Vice President

Attest: _R. L. Bussard_

(R. L. Bussard) Assistant Secretary

STATE OF _Pennsylvania_ :
: ss:
COUNTY OF _Philadelphia_ :

On this, the 29th day of _November_, 1973, before me
_Kate C. Irwin_ the undersigned officer, personally
appeared _Richard J. Fox_, who acknowledged himself to
be a General Partner of WV III, a Pennsylvania limited partnership,
and that he as such General Partner, being authorized to do so,
executed the foregoing instrument for the purposes therein contained
by signing the name of the Partnership by himself as General Partner.

In Witness Whereof, I hereunto set my hand and official seal.

_Kate C. Irwin_

NOTARY PUBLIC

Notary Public, Philadelphia, Philadelphia Co.
My Commission Expires November 22, 1976

-22-